# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1292

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Rodrigo Rodriguez-Mendez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 19, 2003

Filed: July 15, 2003

_____

Before LOKEN, Chief Judge, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

A jury found Rodrigo Rodriguez-Mendez guilty of conspiracy to distribute and possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1) and 846; and possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). The district court[1] sentenced

_____

[1]The Honorable Warren G. Urbom, United States District Judge for the District of Nebraska.

Rodriguez-Mendez to imprisonment for life plus 60 months.[2]  Rodriguez-Mendez appeals challenging the sufficiency of the evidence.  We affirm the judgment and sentence.

I

We review the evidence in the light most favorable to the verdict and accept all reasonable inferences as established.  United States v. Jimenez-Villasensor, 270 F.3d 554, 558 (8th Cir. 2001).  The evidence at trial, consisting largely of testimony from other members of the conspiracy, established fairly the following facts:

On August 27, 2001, officers from Grand Island, Nebraska, stopped a vehicle for leaving a local gas station without paying.  The officers recognized the driver, Rodriguez-Mendez, as a federal fugitive.  In an uncontested search of the vehicle, the officers discovered 50 grams of methamphetamine and a loaded Derringer firearm.  Officers arrested Rodriguez-Mendez.  He was thereafter charged with conspiracy to distribute and possession with intent to distribute methamphetamine, and possession of a firearm during a drug trafficking crime.

Nebraska State Patrol Investigator Wendy Brehm testified she met an informant on March 23, 2001, to plan the purchase of one ounce of methamphetamine for $500 from Raymundo Green Chavez, a/k/a Mundo.  When Investigator Brehm and the informant arrived at the purchase location, Rodriguez-Mendez came to the door and told the informant to return in thirty minutes.  Mundo was not present.  After returning, Rodriguez-Mendez gave Investigator Brehm a plastic bag containing 32.46 grams of meth in exchange for $500.

---

[2]The court imposed a life sentence on Count I (conspiracy), a 480-month sentence on Count II (possession with intent to distribute), and a 60-month sentence on Count III (firearm possession).  The court ordered the sentences for Counts I and II to run concurrently and the sentence for Count III to run consecutively.

Government's evidence indicated Rodriguez-Mendez sourced, priced and delivered methamphetamine to Charles Knapp, Raymond Saenz, Manuel Zamudio and Shawna Jennings, three of whom pleaded guilty to conspiracy to distribute methamphetamine and testified about their drug-related activities with Rodriguez-Mendez. The pricing arrangements indicated an agreement to distribute controlled substances. As an example, Rodriguez-Mendez provided methamphetamine to Saenz and Zamudio and agreed to accept payment upon the drugs being resold.

Knapp testified he purchased in May or June of 2000 methamphetamine for personal use and to sell from a dealer named Mundo. Knapp explained Mundo directed him to purchase methamphetamine from Rodriguez-Mendez when Mundo was unavailable. Knapp purchased approximately two pounds of methamphetamine in the following month from Rodriguez-Mendez. Because he was distributing large amounts of methamphetamine, Rodriguez-Mendez and Mundo came to his home in an effort to make a deal to become his exclusive suppliers. Knapp also testified Rodriguez-Mendez was Mundo's supplier.

Saenz and Zamudio testified each were initially supplied methamphetamine by Mundo. Upon being approached by Rodriguez-Mendez concerning drug debts each owed to Mundo, they nevertheless received methamphetamine directly from him. Raymond Saenz testified he purchased approximately 20 pounds of methamphetamine from Rodriguez-Mendez between the end of 2000 and May 2001. Zamudio testified to transacting four separate purchases from Rodriguez-Mendez aggregating two pounds of methamphetamine. Zamudio shared a pound of the methamphetamine obtained from Rodriguez-Mendez with his partner, Ed Emler.

Shawna Jennings and her landlord in February 2001 purchased methamphetamine and paid off a drug debt to Mundo, according to her testimony. A week later Jennings met Rodriguez-Mendez when she was included in a meeting with Mundo. Rodriguez-Mendez advised Jennings he was Mundo's boss and

Jennings should contact him (Rodriguez-Mendez) should she need anything. Jennings further testified she commenced delivering methamphetamine for Rodriguez-Mendez in exchange for personal use methamphetamine and money. On three occasions she transported a quarter-pound of methamphetamine to a camper for him. Upon leaving the methamphetamine under a seat in the camper she delivered a white envelope from it to Rodriguez-Mendez. Jennings subsequently learned the camper belonged to Ed Emler.

II

We review the sufficiency of the evidence to sustain a conviction de novo. United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002). Citing United States v. Carper, 942 F.2d 1298, 1302 (8th Cir. 1991), Rodriguez-Mendez argues the evidence was insufficient to show he conspired to distribute methamphetamine. He concedes evidence exists of his illegal drug-related activities, but argues the government failed to prove the methamphetamine transactions were something more than a series of isolated sales. Specifically, he argues his involvement was neither voluntary or knowing. This court disagrees.

To support a conviction for a conspiracy to distribute methamphetamine, the government must demonstrate (1) a conspiracy, including an agreement to distribute controlled substances; (2) defendant knew of the conspiracy; and (3) intentionally joined the conspiracy. United States v. Romero, 150 F.3d 821, 824 (8th Cir. 1998). Evidence must demonstrate defendant entered an agreement with at least an additional individual which had as its object a violation of law. United States v. Robinson, 217 F.3d 560, 564 (8th Cir. 2000). Upon the conspiracy being established any evidence connecting the defendant with the conspiracy is sufficient to prove the defendant's involvement. United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995) (citation and quotation marks omitted).

-4-

Evidence demonstrates Rodriguez-Mendez was the central link to a broad-based network of suppliers, recruiting individuals to distribute drugs, thereby intentionally joining the conspiracy. Members of the conspiracy included him, Raymundo Green Chavez (Mundo), Charles Knapp, Raymond Saenz, Manuel Zamudio and Shawna Jennings. While all of the participants may not have known each other, such is not necessary to prove a conspiracy. Romero, 150 F.3d at 825. Sufficient evidence was in the record for the jury to conclude Rodriguez-Mendez was a voluntary and knowing participant in an agreement to buy and sell methamphetamine. An agreement to join a conspiracy "need not be explicit but may be inferred from the facts and circumstances of the case." United States v. Evans, 970 F.2d 663, 669 (10th Cir. 1992). There is no evidence Rodriguez-Mendez was under threat or undue influence from another to participate in the conspiracy. The government presented sufficient evidence at trial to support specific findings of five or more participants in the conspiracy, Rodriguez-Mendez exercising decision-making authority and control over one or more of the co-conspirators, determining the price of the methamphetamine, and recruiting individuals to participate in the scheme.

Rodriguez-Mendez additionally asserts evidence by cooperating witnesses becomes suspect as it was offered for plea agreements. Three of four government witnesses pleaded guilty to conspiracy to distribute methamphetamine while admitting a possibility it was for a lower sentence in return for testimony. There is no evidence promises had been made in exchange for such testimony. United States v. Slaughter, 128 F.3d 623, 628 (8th Cir. 1997). The jury was capable of evaluating the credibility of testimony given in light of the agreements each witness received from the government. The appellate court is not required to re-weigh the evidence or judge credibility of witnesses. United States v. Buford, 108 F.3d 151, 153 (8th Cir. 1997).

III

We affirm the judgment of conviction and sentence of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.