# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3809

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Conway, also known as Tone Tone

*Defendant - Appellant*

_____

No. 12-3974

_____

United States of America

*Plaintiff - Appellee*

v.

Kendall Robinson, also known as K-Rob, also known as Dice

*Defendant - Appellant*

_____

No. 13-1129

_____

United States of America

*Plaintiff - Appellee*

v.

Excell James Randolph, also known as Ism

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: December 17, 2013
Filed: June 10, 2014

_____

Before BYE, BRIGHT, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

The government indicted 12 individuals connected to a crack-cocaine distribution network in Clinton, Iowa. The indictment alleged various drug and weapons charges. Three of those individuals proceeded to trial and were convicted. Those three individuals now appeal.

A grand jury indicted Anthony Conway, Kendall Robinson, and Excell James Randolph each with conspiracy to manufacture, distribute, and possess with intent to distribute 280 grams or more of crack and cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C). After a six-day trial, a jury found each defendant guilty. Each defendant now challenges the sufficiency of the evidence used to support his conviction. Robinson also challenges the sufficiency of the evidence that supported the jury's guilty verdict as to his various weapons charges. Robinson

and Randolph also challenge the district court's[1] denial of their request to provide a "buyer-seller" instruction. Finally, Randolph contends that the district court erred by denying his request to provide a preliminary instruction concerning multiple conspiracies. We affirm.

## I. *Background*

When reviewing a jury's verdict, "[t]his court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *United States v. Boesen*, 491 F.3d 852, 856 (8th Cir. 2007) (citations omitted).

From 2008–2011, several individuals formed a loose-knit crack-cocaine distribution network in Clinton, Iowa. The lead distributor was a group calling itself the "Co-op." The Co-op consisted of four individuals—John Lewis, Tavares Jones, Thomas Kitt, and Jonathan Spates. Spates was a drug supplier from Rockford, Illinois. Lewis and Jones began traveling to Rockford in early 2010 to purchase substantial quantities of crack and powder cocaine from Spates. Lewis and Jones then returned to Clinton for distribution. Kitt later joined Lewis and Jones in pooling their money to purchase crack from Spates for distribution in Clinton. Lewis testified that "[t]he Co-op [was] just like a group of guys that everybody else is coming to buy drugs from." Spates later began traveling to Clinton to distribute crack with Lewis, Jones, and Kitt.

A second important group within the conspiracy consisted of individuals who relocated to Clinton from Chicago, Illinois, to sell crack. Randolph left Chicago and began distributing crack in Sioux City, Iowa. One of Randolph's childhood acquaintances from Chicago, Carley Campbell, recruited Randolph to Clinton by

---

[1] The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

emphasizing the potential for increased profits and decreased violence. Randolph agreed to relocate to Clinton. Because Randolph was unfamiliar with many of Clinton's residents, he distributed crack to other dealers, including Campbell. Randolph recruited other Chicago and Sioux City acquaintances to Clinton for the purposes of crack distribution.

Finally, the network included a third group consisting of low-level crack users who bought from distributors. Many of these users allowed distributors to use their residences as distribution points in exchange for money or crack. Conway, Robinson, and Randolph each distributed crack out of these residences on occasion.

Conway, Randolph, and Robinson knew each other through this network. Upon traveling to Clinton, Spates met Conway and began distributing crack and powder cocaine directly to him. Lewis also testified that he sold crack to Conway. Kitt sold crack to Randolph "on numerous occasions." Meanwhile, Conway and Randolph befriended each other soon after Randolph moved to Clinton. They developed an arrangement where, if either party had little or no crack to distribute and needed money, the other party would provide crack to him. Conway also referred his customers to Randolph when Conway had no crack to distribute. Finally, they often sold crack from the same location and converted powder cocaine to crack cocaine together.

Lewis also supplied Robinson with crack and powder cocaine. Lewis testified that Robinson "purchased drugs from me on numerous occasions." Robinson accompanied Lewis, Jones, and Kitt to Rockford at least once to purchase crack. Robinson formed a distribution relationship with Thomas Brown, a Clinton dealer. Robinson "fronted"[2] crack to Brown, who then distributed the crack to users.

---

[2]Brown defined "fronting" as the following: "[Robinson] would give [crack] to me and I owed some money back on whatever I make on it." We have explained

-4-

Robinson also sold crack to Campbell as well as many of Conway's and Randolph's customers.

On March 1, 2010, police recorded phone calls between Randolph and an informant in which they planned a crack deal. The informant then met Randolph and made a controlled purchase of crack. On December 7, 2010, authorities stopped a car in which Robinson was a passenger. The officers who performed the stop knew Robinson and knew that he was the subject of an active arrest warrant. After arresting Robinson, police discovered two packages of cocaine in his possession.

## II. *Discussion*

On appeal, all three defendants challenge the sufficiency of the evidence underlying their convictions for conspiracy to manufacture, distribute, and possess with intent to distribute 280 grams or more of crack and cocaine. Robinson also challenges the sufficiency of the evidence underlying his three weapons convictions. Randolph and Robinson appeal the district court's denial of their request to provide a "buyer-seller" instruction, and Randolph separately challenges the district court's denial of his request to provide a preliminary "multiple conspiracies" instruction.

### A. *Sufficiency of the Evidence*

"We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Polk*, 715 F.3d 238, 245 (8th Cir. 2013) (quotation and citation omitted). "We will reverse 'only if no reasonable jury could have found the defendant guilty beyond a

---

that "'[f]ronting' denotes a transaction in which the buyer receives drugs on credit and repays the seller from the resale proceeds." *United States v. Slagg*, 651 F.3d 832, 841 n.3 (8th Cir. 2011).

reasonable doubt.'" *Slagg*, 651 F.3d at 839 (quoting *United States v. Donnell*, 596 F.3d 913, 924 (8th Cir. 2010)).

"To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *Slagg*, 651 F.3d at 840 (quotation and citation omitted). "An agreement to join a conspiracy need not be explicit but may be inferred from the facts and circumstances of the case." *Id.* (quotation and citations omitted). "Proof of a common plan or tacit understanding is sufficient." *United States v. Hoelscher*, 914 F.2d 1527, 1534 (8th Cir. 1990) (citations omitted). The government need not prove a "discrete, identifiable organizational structure." *Slagg*, 651 F.3d at 840 (quotation and citations omitted). In fact, the structure may be "a loosely knit, non-hierarchical collection of persons who engaged in a series of transactions involving distribution-quantities of [crack] in and around" a particular city over a course of time. *Id.* at 837.

"[A] defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." *United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc) (citations omitted). The government may prove a defendant's involvement in a conspiracy with direct or circumstantial evidence so long as the evidence is "sufficient to prove the elements of the crime beyond a reasonable doubt." *Id.* (citations omitted). Thus, evidence at trial that consists primarily of testimony from other members of the conspiracy may suffice to establish defendant's guilt. *See Rodriguez-Mendez*, 336 F.3d at 694. Juries are "capable of evaluating the credibility of testimony given in light of the agreements each witness received from the government." *Id.* at 696. "The appellate court is not required to re-weigh the evidence or judge credibility of witnesses." *Id.* (citation omitted).

"[A] defendant's mere presence, coupled with the knowledge that someone else who is present intends to sell drugs, is insufficient to establish membership in a conspiracy." *United States v. Rolon-Ramos*, 502 F.3d 750, 754 (8th Cir. 2007) (quotation and citation omitted). However, "[a]lthough not sufficient by itself, association or acquaintance among the defendants supports an inference of conspiracy." *United States v. Jackson*, 345 F.3d 638, 648 (8th Cir. 2003) (quotation and citation omitted). For example, the defendants' presence in the same car while on a journey to further the conspiracy indicates their cooperation and agreement. *United States v. Sparks*, 949 F.2d 1023, 1027 (8th Cir. 1991). Furthermore, the defendants need not know each other in order to be coconspirators. *Rodriguez-Mendez*, 336 F.3d at 695.

Finally, evidence is sufficient to show a conspiracy where drugs are purchased for resale. *Donnell*, 596 F.3d at 925. "'[E]vidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute.'" *Slagg*, 651 F.3d at 842 (quoting *United States v. Garcia-Hernandez*, 530 F.3d 657, 661 (8th Cir. 2008)). When evidence exists that large amounts of drugs were distributed over an extended period of time, including fronting transactions, there is ample evidence to support a conspiracy. *Slagg*, 651 F.3d at 841 (citing *United States v. Pizano*, 421 F.3d 707, 720 (8th Cir. 2005)).

### 1. *Anthony Conway*

Conway contends on appeal that the government presented insufficient evidence for the jury to find him guilty of conspiracy to manufacture, distribute, and possess with intent to distribute crack. He emphasizes that he "was never the subject of any controlled buy, was never the subject of a search warrant, was never at any place when a search warrant was executed, and was never found in possession of any controlled substance." Conway also contends that the only evidence against him was the self-serving, speculative testimony of other coconspirators.

Conway's arguments fail. First, a defendant need not be caught "red-handed" with drugs to be convicted of this crime. We have previously recognized that convictions attained on the basis of testifying coconspirators is sufficient. *See Rodriguez-Mendez*, 336 F.3d at 694. We entrust juries to consider the credibility of testifying coconspirators. *See id.* at 696. On this record, we will not reconsider the jury's credibility determinations. *Id.*

Second, the evidence demonstrated that Conway associated with other members of the conspiracy, which supports an inference of his participation. *See Jackson*, 345 F.3d at 648. Several witnesses explained that Conway and Randolph associated soon after Randolph moved to Clinton. They developed a mutual arrangement to recommend customers and re-supply when drug quantities diminished. They distributed crack from several of the same residential distribution points. They converted powder cocaine to crack cocaine together. Relatedly, Conway purchased his drug supply from the same group—the Co-op—as the other members of the conspiracy. Co-op members like Lewis and Spates testified that they supplied Conway with drugs on numerous occasions. These repeated purchases provide enough evidence to submit the question of conspiracy to the jury. *See Slagg*, 651 F.3d at 842 ("[E]vidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." (quotation and citation omitted)).

Although the evidence does not reflect an explicit agreement among all coconspirators to distribute crack and cocaine throughout Clinton, the law does not require such evidence. The evidence here amply demonstrates "proof of a common plan or tacit understanding" among all of those indicted to distribute these drugs throughout Clinton. *See Hoelscher*, 914 F.2d at 1534. The government proved the existence of "a loosely knit, non-hierarchical collection of persons who engaged in a series of transactions involving distribution-quantities of [crack] in and around"

Clinton from 2008–2011. *Slagg*, 651 F.3d at 837. Consequently, we reject Conway's sufficiency-of-the-evidence arguments.

### 2. *Excell James Randolph*

Like Conway, Randolph contends that insufficient evidence supported his conviction for conspiracy to manufacture, distribute, and possess with intent to distribute crack. Specifically, he contends that "[t]he evidence at trial did not show even a tacit agreement between himself and the majority of those individuals indicted."

Randolph's argument fails for many of the same reasons fatal to Conway's. Randolph associated with many coconspirators, including Campbell, Cameron Williams, and Conway. *See Jackson*, 345 F.3d at 648. As previously discussed, Randolph maintained extensive drug ties with Conway. *See supra* Parts I & II.A.1. Randolph also obtained supplies from the Co-op. For example, Kitt testified that he supplied Randolph with crack on numerous occasions. Despite Randolph's lack of familiarity with some coconspirators, his close ties to at least four other coconspirators is sufficient to bring him within the purview of this overarching conspiracy. *See Rodriguez-Mendez*, 336 F.3d at 695. Finally, police caught Randolph distributing crack to an informant.

Randolph's ties to other coconspirators involving drug distribution, his relationship with a common supplier, his numerous purchases of resale quantities of drugs, and his distribution of crack to a government informant support the jury's conclusion that Randolph agreed to participate in the conspiracy to distribute crack and cocaine throughout Clinton.

### 3. *Kendall Robinson*
#### a. *Drug Charge*

Robinson similarly argues that sufficient evidence did not support his conviction for conspiracy to manufacture, distribute, and possess with intent to distribute crack. He contends that "[t]he evidence presented at . . . trial relating to [his] participation, association, and communication with others alleged to have been involved and contributing to the purposes of the charged conspiracy was so lacking and insufficient[ ] that a reasonable jury could not have reached" a guilty verdict.

We reject Robinson's contention. The government proved beyond a reasonable doubt that Robinson played at least a minor role in the conspiracy. *See Lopez*, 443 F.3d at 1030. First, officers discovered significant quantities of cocaine on Robinson's person during the stop of a vehicle in which he was a passenger. Second, Robinson associated with other members of the conspiracy and bought crack from the same supplier. *See Jackson*, 345 F.3d at 648. As part of the Co-op, Lewis knew Robinson and sold crack to him several times. On at least one occasion, Robinson traveled with Lewis and other members of the Co-op to Rockford to purchase distribution quantities of crack and powder cocaine. We have recognized that one's mere presence in a vehicle with other members of a conspiracy while it engages in activities in furtherance of the conspiracy indicates cooperation and agreement. *See Sparks*, 949 F.2d at 1027. The fact that Robinson did not know other members of the conspiracy is not dispositive. *See Rodriguez-Mendez*, 336 F.3d at 695. Finally, Robinson frequently fronted the drugs that he bought from Lewis to Brown for resale. *See United States v. Pizano*, 421 F.3d 707, 720 (8th Cir. 2005) (recognizing that evidence of distribution quantities of drugs, including fronting transactions, over an extended period of time was "ample evidence to support" a jury's finding of participation in a conspiracy).

As a result, we reject Robinson's argument that sufficient evidence did not support his conviction for conspiracy to manufacture, distribute, and possess with intent to distribute crack.

b. *Weapons Charges*

The grand jury also indicted Robinson with one count possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Robinson contends that sufficient evidence did not support his conviction on any of these weapons charges.

i. *Possession in Furtherance*

In connection with the possession-in-furtherance crime, Robinson emphasizes that "[t]he gun or weapon referenced by witnesses was never discussed as being brandished in any fashion; nor discussed as ever being fired upon another or in the direction of another" or "seen during any alleged drug transaction." Furthermore, he highlights that authorities never found a weapon in his possession.

Federal law criminalizes the activities of those who "in furtherance of any [drug trafficking crime], possesses a firearm." 18 U.S.C. § 924(c). "To satisfy the 'in furtherance of' element of § 924(c), the government must present evidence from which a reasonable trier of fact could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of furthering, advancing or helping forward the drug crime." *United States v. Robinson*, 617 F.3d 984, 988 (8th Cir. 2010) (quotations and citations omitted). Possession may be actual or constructive; it need not be exclusive. *United States v. Fetters*, 698 F.3d 653, 658 (8th Cir. 2012), *cert. denied*, 133 S. Ct. 2841 (2013).

Here, a reasonable juror could determine that a sufficient nexus existed between Robinson's firearm possession and his drug distribution. *See Robinson*, 617

F.3d at 988. Lewis testified that Robinson carried a semiautomatic pistol for protection during Robinson's trip to Rockford. Lewis assured Robinson that the gun was not needed, yet Robinson continued to carry the gun in close proximity. Thus, Robinson carried the firearm for protection while engaging in a drug transaction. *See United States v. Neve*, 496 F. Appx. 699, 701 (8th Cir. 2013). Furthermore, some of Robinson's customers stated that Robinson showed them a firearm while conducting transactions. Finally, in an attempt to create and preserve a drug-distribution territory, Robinson intimidated the owner of a bar where Robinson transacted drugs by telling the owner that he had a gun. A reasonable juror could therefore determine that Robinson possessed a firearm in furtherance of a drug crime.

### ii. *Felon in Possession*

To obtain a conviction for possession of a firearm by a convicted felon, the government must prove "(1) previous conviction of a crime punishable by a term of imprisonment exceeding one year, (2) knowing possession of a firearm, and (3) the firearm was in or affecting interstate commerce." *United States v. Montgomery*, 701 F.3d 1218, 1221 (8th Cir. 2012) (citing 18 U.S.C. § 922(g)(1)). Robinson challenges the second element only.

The government's felon-in-possession charges stem from two incidents that occurred in November and December 2010. Robinson's friend, Mykeah Jefferson, testified that Robinson had become angry with his wife in November 2010. Robinson asked Jefferson to follow him to a park while Robinson drove his wife's car. At the park, Robinson exited the car and shot it five or six times with a handgun. Robinson then retrieved the shell casings, got in Jefferson's car, and left. Robinson later told Brown about the incident and directed Brown to discard the shell casings.

Jefferson also recalled riding with Robinson to Brown's apartment in December 2010. Once there, Robinson asked Brown "to bring his stuff down." Brown brought Robinson a coat, a watch, and a revolver. Apparently, Robinson returned the revolver

to Brown at some point because, after police arrested Robinson in a different matter, he told them that Brown had a revolver in his apartment. Police later found the revolver there. Brown told police and later testified that the revolver actually belonged to Robinson.

Jefferson's testimony alone supports the jury's determination of guilt as to the felon-in-possession charges. She testified to seeing Robinson possess a firearm on two occasions. Additionally, as for the November 2010 incident, forensic evidence established that the bullets in Robinson's wife's car matched those of the weapon that Robinson was alleged to have carried. As for the December 2010 incident, Brown also testified that Robinson owned the revolver in question. Although Brown, a convicted felon, had the motive to disclaim ownership of the gun, "[w]e will not weigh the evidence or assess the credibility of witnesses" when criminal defendants launch sufficiency-of-the-evidence challenges. *United States v. Willis*, 89 F.3d 1371, 1376 (8th Cir. 1996). This is especially true where Robinson had the same motivation to disclaim the weapon, and Jefferson corroborated Brown's testimony.

Consequently, we reject Robinson's contention that sufficient evidence did not support his weapons convictions.

B. *Jury Instructions*

Randolph and Robinson both contend that the district court erred in refusing to provide a "buyer-seller" closing instruction to the jury. Randolph also challenges the district court's denial of his request to provide a "multiple conspiracies" preliminary instruction.

"Defendants are entitled to an instruction explaining their theory of the case if the request is timely made and if the proffered instruction is supported by the evidence and correctly states the law." *Slagg*, 651 F.3d at 848 (citing *United States v. Adams*, 401 F.3d 886, 898 (8th Cir. 2005)). Thus, a defendant is entitled to the

instruction only "if the evidence supported his theory." *United States v. Jones*, 160 F.3d 473, 481 (8th Cir. 1998). "We review a district court's jury instructions for abuse of discretion." *Slagg*, 651 F.3d at 848 (citation omitted). Furthermore, "we will reverse a jury verdict when the errors misled the jury or had a probable effect on the jury's verdict." *Id.* (quotation, alteration, and citations omitted).

### 1. *Buyer-Seller Instruction*

The point at which buyers and sellers of narcotics become coconspirators in drug distribution evades precise definition. "[A] single drug sale does not automatically make buyer and seller co-conspirators." *United States v. Moran*, 984 F.2d 1299, 1302 (1st Cir. 1993) (citation omitted). In other words, "proof of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy such as is charged here." *United States v. Prieskorn*, 658 F.2d 631, 636 (8th Cir. 1981) (quotation and citation omitted). The mere buyer-seller relationship exists where the defendant made only one purchase and did not know any of the other coconspirators except for the seller. *Id.* However, "[a] reasonable jury can find that a defendant has more than a mere buyer-seller relationship if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers." *Slagg*, 651 F.3d at 842 (quotation and citations omitted). The *Moran* court stated:

> At some point the relationships converge. A pattern of sales for resale between the same persons, together with details supplying a context for the relationship, might well support a finding of conspiracy. Even a single sale for resale, embroidered with evidence suggesting a joint undertaking between buyer and seller, could suffice. Common knowledge, interdependence, shared purpose and the other ingredients of a conspiracy are matters of degree. Almost everything in such a case depends upon the context and the details. The evaluation of the facts is entrusted largely to the jury.

*Moran*, 984 F.2d at 1303 (citations omitted).

-14-

The buyer-seller instruction is inappropriate where "there is evidence of multiple drug transactions, as opposed to a single, isolated sale." *United States v. Hester*, 140 F.3d 753, 757 (8th Cir. 1998) (quotation and citations omitted). This instruction is appropriate when the facts indicate "a single transaction case involving small quantities of drugs consistent with personal use." *United States v. Cordova*, 157 F.3d 587, 597 (8th Cir. 1998) (citations omitted). Where the conspiracy involves large quantities of drugs and significant interaction between dealers and users over an extended period of time, the instruction is inappropriate. *Id.* We have upheld district court decisions not to provide a buyer-seller instruction when the evidence does not support the instruction. *See, e.g.*, *Slagg*, 651 F.3d at 848; *Jones*, 160 F.3d at 481; *Cordova*, 157 F.3d at 597; *Hester*, 140 F.3d at 757.

The district court declined the defendants' request for a buyer-seller instruction. In rejecting the instruction, the district court explained:

> I didn't give the buyer-seller instruction. That instruction usually says something to the effect of the mere fact of a buyer-seller relationship alone is insufficient to establish a conspiracy. Case law from the Eighth Circuit Court of Appeals states that it's appropriate where the government alleges a conspiracy relationship arising out of a single transaction and it's not appropriate where there's multiple. And here is why I think that's true. If, for example, you had behavior that was buyer-seller behavior that was repeated a hundred times in a similar fashion, the fact of a buyer-seller relationship might establish a conspiracy under those circumstances, and it could be confusing because there's—the mere fact of repetitive similar activity can easily be indicative of an agreement or understanding. So that's why I didn't give them.

This case does not involve the one-time buyer who purchased a small amount of crack for personal use; rather, this case involves the interactions of members of a drug-distribution network over approximately three years. *See Cordova*, 157 F.3d at

597; *Hester*, 140 F.3d at 757. Randolph and Robinson purchased resale quantities of cocaine and crack numerous times. They each redistributed crack on a number of occasions to various customers throughout Clinton over a long period of time. The district court did not abuse its discretion in determining that the evidence failed to support the giving of a buyer-seller instruction.[3]

## 2. *Multiple Conspiracies Instruction*

Randolph argues that the district court erred by failing to provide a "multiple conspiracies" preliminary instruction. Although the district court provided such an instruction in its final jury instructions, Randolph contends that the district court should have provided it as a preliminary instruction. The district court declined, stating, "I purposefully excluded an instruction on multiple conspiracies. Like any other defense, I want to hear the opening statement and hear whether the evidence is sufficient to support that kind of defense, and that's why I did not give that."

"A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *United States v. Roach*, 164 F.3d 403, 412 (8th Cir. 1998) (citations omitted). Competing dealers may nonetheless be involved in the same conspiracy. *Id.* Where the participants in a conspiracy know that the drugs they distribute come from a larger distribution framework already in place, know other members of the conspiracy, and distribute drugs received from a common source, they are likely engaged in a single conspiracy. *Id.* "Whether the Government's proof at trial established only a single conspiracy or multiple conspiracies 'is determined by the totality of the circumstances, and because it is a question of fact, we draw all reasonable inferences in favor of the verdict.'" *Slagg*, 651 F.3d at 841 (quoting *United*

---

[3]Because we conclude that Robinson fails to identify any district court error, we also reject Robinson's derivative contention that the district court abused its discretion in denying his motion for new trial.

*States v. Radtke*, 415 F.3d 826, 838 (8th Cir. 2005)). Some factors to consider to determine whether a single conspiracy is present are the nature of the activities, the location of where events of the conspiracy occurred, the identity of the conspirators, and the conspiracy's time frame. *Slagg*, 651 F.3d at 841–42. The fact that there are multiple sources of the drugs does not create multiple conspiracies. *Id.* at 842. "Likewise, one conspiracy may exist despite the involvement of multiple groups and the performance of separate acts." *Id.* (quotation, alteration, and citations omitted).

Although defendants are entitled to receive a theory-of-defense instruction if the instruction is a correct statement of law and the evidence supports it, *Slagg*, 651 F.3d at 848, there is no requirement that a district court provide a theory-of-defense *preliminary* instruction. Logically, the district court desired to hear opening statements and testimony before deciding whether the evidence supported the giving of such an instruction. Randolph points to no authority that requires the district court to provide a theory-of-defense instruction at that stage of the trial. Consequently, we hold that the district court did not abuse its discretion in refusing to give this preliminary instruction.

## III. *Conclusion*

We affirm the judgments of the district court.

BRIGHT, Circuit Judge, concurring in part and dissenting in part.

I respectfully concur in part and dissent in part. I concur with the majority that sufficient evidence supports each conspiracy conviction. However, I disagree with the majority opinion as to Section II.B.1. regarding a "buyer-seller" jury instruction. I conclude that the district court abused its discretion by not giving the "buyer-seller" jury instruction requested by Kendall Robinson and Excell Randolph because evidence in the record supported its submission. *See United States v. Jones*, 160 F.3d

473, 481 (8th Cir. 1998) (stating that a defendant is entitled to a "buyer-seller" instruction if the evidence supports his or her theory).

In drug conspiracy cases such as this, defendants face vast difficulty to undercut these claims with only the general credibility evaluation jury instruction. Moreover, most conspiracy convictions call for very harsh, lengthy prison sentences under federal sentencing guidelines. Too often the conspiracy convictions rest on little more than guilt by association. The jury should be given a clear choice by appropriate instructions in such cases. Here, an additional instruction as to a buyer-seller relationship was warranted and would have aided the jury in properly evaluating the facts and deciding whether a true conspiracy existed.

_____