# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2813
_____

United States of America

*Plaintiff - Appellee*

v.

Lonnie Joseph Parker

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana
_____

Submitted: June 13, 2025
Filed: August 1, 2025
_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury found Lonnie Parker, a licensed medical practitioner, guilty of distributing oxycodone and promethazine HCl with codeine solution in a manner unauthorized by the Controlled Substances Act. *See* 21 U.S.C. § 841(a)(1). The

district court[1] sentenced Parker to 87 months' imprisonment. On appeal, Parker contends that the evidence was insufficient to support his convictions, the jury instructions were improper, and the district court committed procedural error in sentencing. Finding no reversible error, we affirm.

## I.

On August 3, 2018, an officer in Plano, Texas pulled an individual—whom we will refer to as N.C.—over for reckless driving. N.C. was visibly impaired and had a yellow stain on his mouth. The officer asked N.C. if he had taken any medication, and N.C. responded that he had taken Lyrica for hand or back pain. After arresting N.C., the officer searched N.C.'s car and discovered numerous prescription bottles which listed Parker as the prescribing physician. N.C. was transported to the Plano City Jail and died later that same day.

The Drug Enforcement Administration ("DEA") began suspecting that Parker was operating his medical clinic in Texarkana, Arkansas as a "pill mill" from which he illegally distributed various opioid prescriptions. On October 8, 2019, the DEA executed a search warrant at Parker's clinic and seized numerous patient records. The DEA retained an independent pain treatment expert—Dr. Mark Rubenstein—to review a subset of those records. Rubenstein reviewed N.C.'s patient record, as well as the patient records of four individuals whom we will refer to here as J.F., L.H., G.T., and K.J. The Government subsequently determined that Parker had distributed oxycodone—a schedule II controlled substance—and promethazine HCl with codeine solution—a schedule V controlled substance—in violation of the Controlled Substances Act.

On June 15, 2022, a grand jury returned an indictment charging Parker with unauthorized distribution of oxycodone to N.C., J.F., and L.H., and unauthorized

---

[1]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

distribution of promethazine HCl with codeine solution to G.T. and K.J. *See id.* The indictment also charged Parker with causing the death of N.C. *See id.* § 841(b)(1)(C).

During an eight-day jury trial, the Government presented testimony from sixteen witnesses. As relevant here, the Government called Rubenstein as an expert witness in the area of pain management. Rubenstein explained Arkansas's regulations regarding legitimate medical practice in pain management. He testified that Parker had not conformed his conduct to those regulations. According to Rubenstein, Parker had failed to conduct necessary physical examinations for his patients, prescribed oxycodone and promethazine HCl with codeine solution inappropriately, and maintained deficient and internally inconsistent patient records.

At the close of trial, the district court gave various instructions to the jury. Instruction No. 6 instructed the jury that "[t]he terms 'legitimate medical purpose' and 'usual course of professional practice' mean acting in accordance with appropriate criteria for prescribing controlled substances in the State of Arkansas." Instruction No. 14 instructed the jury that it could find that Parker "acted knowingly if [it found] . . . that the defendant believed there was a high probability that [N.C., L.H., and J.F.] were addicted to oxycodone, and that [G.T. and K.J.] were diverting promethazine with codeine cough syrup, and that he took deliberate actions to avoid learning of that fact."

The jury found Parker guilty of the unauthorized distribution of oxycodone to N.C. and L.H., and the unauthorized distribution of promethazine HCl with codeine solution to G.T. and K.J. It found Parker not guilty of the unauthorized distribution of oxycodone to J.F. and also not guilty of causing the death of N.C. At sentencing, the parties disputed the quantity of controlled substances that should be used to calculate Parker's base offense level under the sentencing guidelines. Parker argued that the district court should consider only those controlled substances that were prescribed to N.C., L.H., G.T., and K.J. on the date set forth in the indictment. The Government argued that the district court should also include uncharged

prescriptions written by Parker to N.C., L.H., G.T., and K.J. outside of that date as relevant conduct. *See* U.S.S.G. § 1B1.3. The district court agreed with the Government and calculated Parker's base offense level as 28. After accounting for a two-level enhancement for using a special skill to facilitate the offense, the district court calculated Parker's total offense level as 30. Parker's total offense level of 30 combined with a criminal history category of II resulted in an advisory sentencing guidelines range of 108 to 135 months' imprisonment. The district court varied downwards and sentenced Parker to 87 months' imprisonment. The district court noted that, even if it had ruled in Parker's favor on quantity, it nonetheless would have imposed the same sentence.

## II.

On appeal, Parker asserts that the evidence was insufficient to support his convictions and that the jury instructions were erroneous. He also contends that the district court miscalculated the quantity of controlled substances used in determining his base offense level. We address each claim in turn.

## A.

We first address whether the evidence was sufficient to convict Parker of the unauthorized distribution of oxycodone and promethazine HCl with codeine solution. We review sufficiency of the evidence challenges *de novo*, "viewing the evidence and the jury's credibility determinations in the light most favorable to its verdict and reversing only if no reasonable jury could have found [the defendant] guilty." *United States v. Obi*, 25 F.4th 574, 577 (8th Cir. 2022).

To prove Parker guilty of the unauthorized distribution of oxycodone and promethazine HCl with codeine solution, the Government had to show that Parker "knowingly or intentionally" distributed the controlled substances in a manner not "authorized" by the Controlled Substances Act. 21 U.S.C. § 841(a)(1). A licensed medical practitioner is "authorized" to prescribe controlled substances when he

issues a prescription "for a legitimate medical purpose . . . acting in the usual course of his professional practice."[2] 21 C.F.R. § 1306.04(a) (2025). Parker contends that the evidence was insufficient because the Government did not prove that he acted without a "legitimate medical purpose." But Rubenstein reviewed Parker's patient files and testified that, with respect to each patient named in the indictment, Parker either prescribed controlled substances that were not appropriate for the claimed ailment or prescribed excessive amounts of controlled substances. *See United States v. Heaton*, 59 F.4th 1226, 1246 (11th Cir. 2023) (noting that a physician violates § 841(a)(1) when he prescribes "an excessive quantity of controlled substances" or prescribes controlled substances that have "no logical relationship to the treatment of the patient's alleged condition"). Rubenstein also testified that Parker prescribed controlled substances without performing physical examinations that would have informed him if such prescriptions were necessary. *See id.* (noting that a physician violates § 841(a)(1) when he distributes controlled substances without physically examining patients). The jury was entitled to accept Rubenstein's testimony, which provided sufficient evidence to conclude that Parker had prescribed oxycodone and promethazine HCl with codeine solution without "a legitimate medical purpose." 21 C.F.R. § 1306.04(a); *see United States v. Cole*, 721 F.3d 1016, 1022 (8th Cir. 2013) ("[I]n reviewing a sufficiency-of-the-evidence challenge, we are obliged to defer to the jury's determination of the credibility of the witnesses." (internal quotation marks omitted)). Accordingly, we reject Parker's challenge to the sufficiency of the evidence.

---

[2]Parker asks this court to decide whether the terms "legitimate medical purpose" and "in the usual course of his professional practice" should be considered in the conjunctive or disjunctive. 21 C.F.R. § 1306.04(a) (2025). Because the jury was instructed on the conjunctive and the Government does not challenge this determination, we take no position on whether the terms "legitimate medical purpose" and "usual course of his professional practice" should be considered in the conjunctive or disjunctive.

**B.**

We next address Parker's challenge to the jury instructions—specifically, Instructions No. 6 and 14. Because Parker raised these arguments for the first time on appeal, Parker has forfeited them and we review only for plain error. *See United States v. Ford*, 888 F.3d 922, 925-26 (8th Cir. 2018). To establish plain error, Parker "must show that there is (1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* at 926 (internal quotation marks omitted). If all three conditions are met, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Parker argues that Instruction No. 6, which instructed the jury that "[t]he terms 'legitimate medical purpose' and 'usual course of professional practice' mean acting in accordance with appropriate criteria for prescribing controlled substances in the State of Arkansas," wrongly limited the jury to consider only the criteria set forth by a single state. According to Parker, the district court should have instead instructed the jury on a national standard, namely the regulations set forth by the Centers for Disease Control and Prevention ("CDC"). However, there is nothing in the language of § 841(a)(1) that suggests that a physician's conduct must be compared to a national standard. And, contrary to Parker's assertion that the Supreme Court in *Ruan v. United States*, 597 U.S. 450 (2022) disavowed reference to a state standard, *Ruan* addressed only the *mens rea* required under § 841(a)(1). *See id.* at 457. Parker therefore has not identified an error in Instruction No. 6 that is plain. Moreover, he fails to show how the instruction affected his "substantial rights." *Ford*, 888 F.3d at 926. He does not identify a meaningful distinction between the standards set forth by the CDC and the State of Arkansas that would justify reversal in this case. Accordingly, we reject Parker's challenge to Instruction No. 6.

As for Instruction No. 14, it instructed the jury that it could find that Parker "acted knowingly if [it found] . . . that the defendant believed there was a high probability that [N.C., L.H., and J.F.] were addicted to oxycodone, and that [G.T.

-6-

and K.J.] were diverting promethazine with codeine cough syrup, and that he took deliberate actions to avoid learning of that fact." Parker asserts that the instruction was erroneous because it wrongfully equated treating addicted patients with criminal conduct. While we agree with Parker that treating addicted patients is not in and of itself criminal conduct, we cannot say that he has established that he is entitled to relief. "In determining the effect of [a challenged] instruction on the validity of [a] conviction, [courts] accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Boyde v. California*, 494 U.S. 370, 378 (1990). Before closing arguments, the district court instructed the jury on the basic elements of the charged offenses, informing the jury that the Government had to show that Parker acted without "a legitimate medical purpose" and outside "the usual course of his professional practice" in order to be convicted. Instruction No. 6, which reiterated those basic requirements to the jury, never equated treating addicted patients with criminal conduct. And Instruction No. 13 clarified that, if Parker "dispense[d] a drug in good faith, in medically treating a patient," then "he has dispensed the drug lawfully." Instruction No. 13 did not draw artificial lines between treating patients who were addicted and those who were not. Moreover, while it is true that Instruction No. 14 referred to addiction, the same instruction also stated that a "willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of *wrongdoing* and who can almost be said to have actually known the critical facts." Because we cannot view the "addicted" language in Instruction No. 14 in artificial isolation—and the jury instructions as a whole clarified what constituted criminal conduct—we cannot say that Parker has established entitlement to relief for plain error. *See Greer v. United States*, 593 U.S. 503, 508 (2021) (noting that establishing plain error is "difficult").

In addition, Parker argues that the jury instructions were erroneous because the district court gave Instruction No. 14 without explicitly reciting to the jury a particular fact that Parker took deliberate action to avoid learning. Parker contends that such a reference is mandated by the Supreme Court's decision in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). However, the portion of the

opinion cited by Parker only states the basic requirements for the doctrine of willful blindness, namely that "[t]he defendant must subjectively believe that there is a high probability that a fact exists" and that "the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 769. The opinion nowhere states that the district court must specifically identify that fact for the jury. Accordingly, we reject Parker's challenge to Instruction No. 14.

## C.

Finally, we address Parker's claim of procedural error in his sentencing. "Procedural error includes failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (internal quotation marks omitted). In determining whether a district court committed procedural error, "we review the district court's factual findings for clear error, and its interpretation and application of the Guidelines, de novo." *United States v. Frisch*, 704 F.3d 541, 543 (8th Cir. 2013) (alteration omitted).

Parker contends that the district court erred in calculating the quantity of controlled substances used to determine his base offense level. He asserts that the district court's calculation should not have included conduct outside of the indictment. He also claims that some of his prescriptions to the individuals named in the indictment were legitimate and therefore should not be included in quantity. We need not address the merits of Parker's contention as any error is harmless. We have held that, even when a district court miscalculates a sentence, any error is harmless "when the district court indicates it would have alternatively imposed the same sentence even if a lower guideline range applied." *United States v. Hamilton*, 929 F.3d 943, 948 (8th Cir. 2019). Here, the district court stated that it would have "impose[d] [the] same sentence regardless" of its ruling on quantity. Thus, any error was harmless and we reject Parker's challenge to his sentence.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____