# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3053
_____

United States of America

*Plaintiff - Appellee*

v.

Joe Lenard Rodriguez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 20, 2020
Filed: January 8, 2021

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Joe Lenard Rodriguez was convicted of seven drug-trafficking crimes. Rodriguez appeals, challenging the sufficiency of the evidence for one of his

convictions and arguing that the district court[1] erred in its handling of a transcript of an audio recording. We affirm.

## I.

On August 1, 2017, law enforcement conducted a controlled buy from an individual who subsequently agreed to become a confidential informant (the "CI"). The CI told law enforcement that Rodriguez was the source of the methamphetamine that she was caught selling. She testified that Rodriguez would supply her with 3.5 to 7 grams of methamphetamine "[o]nce a week at least" during the time period leading up to August 1. Some of this she would use—she testified that she used methamphetamine most days, a quarter gram at a time—and the rest of it she would sell. According to the CI, Rodriguez made regular trips to Texas to replenish his stock of methamphetamine.

After agreeing to cooperate with law enforcement, the CI conducted four controlled buys from Rodriguez in August 2017 and a fifth in October 2017. On each occasion, the CI carried a hidden recording device. During the October controlled buy, Rodriguez said that he was heading to Texas to acquire more methamphetamine and offered to sell some to the CI at a discount if she paid in advance. After obtaining a warrant, law enforcement placed a tracker on Rodriguez's vehicle, monitored his travel to Texas, and arrested him on November 9 while he was on his way back to North Dakota. A search of his car revealed over 300 grams of methamphetamine wrapped in plastic and concealed in raw meat.

On June 20, 2018, a federal grand jury indicted Rodriguez on seven counts, including one count of conspiracy to possess with intent to distribute methamphetamine. *See generally* 21 U.S.C. §§ 841(a)(1), 846. The indictment

---

[1]The Honorable Daniel L. Hovland, then Chief Judge, United States District Court for the District of North Dakota.

alleged that Rodriguez was involved in the conspiracy between July 1, 2017 and the date of the indictment.

During the morning of the day before trial, the prosecutor emailed defense counsel a transcript of a recording of one of the controlled buys. That afternoon, the prosecutor sent defense counsel another email with the subject line "Joe Rodriguez trial, stipulation to Exhibit 5 (audio of 10/24/17 controlled buy)." In the body of the email, the prosecutor wrote, "I agree to your proposal from our call this morning that the parties stipulate as to foundation and admissibility for the 'deal' portion of this audio recording (and related transcript) in exchange for us not trying to offer into evidence the entire audio recording as part of the prosecution case-in-chief." Defense counsel responded, "That sounds good." What was then labelled "Exhibit 5" included both the audio and the transcript.

The next day, at the beginning of trial, the district court asked the parties if there were any evidentiary issues that needed to be resolved outside the presence of the jury. The prosecutor stated that "with respect to Exhibit 5, which is an audio excerpt of one of the five controlled buys that is alleged to have taken place in this case, the parties have agreed as to foundation and admissibility for that and I wanted to put that on the record now." When the district court asked defense counsel if she was "on the same page," she replied: "Yes, Your Honor. . . . [W]e just request that the transcript be just limited to the actual controlled buy, not before or after the parties interact in that tape." Rodriguez was present when his counsel made this statement, and he did not object.

After the Government played the controlled-buy segment of Exhibit 5 for the jury with the transcript appearing on the screen in the courtroom, defense counsel objected on the ground that the transcript was lacking in foundation. Later, defense counsel claimed that the transcript contained inaccuracies. The district court ruled that the transcript was not to be replayed for or sent back with the jury and that Rodriguez could argue to the jury that the transcript was inaccurate. Exhibit 5 was relabeled "Exhibit 5A" and marked as a court exhibit, and a copy of the audio

recording without the transcript was sent back with the jury under the label "Exhibit 5." When the district court presented its final jury instructions, which did not address the transcript, defense counsel stated, "I just wanted to put on the record that we did review the jury instructions and we don't have any objections."

The jury returned a verdict of guilty on all seven counts. Rodriguez appeals, raising two issues. First, he argues that there was insufficient evidence to support his conviction for conspiracy to possess with intent to distribute methamphetamine. Second, he argues that the district court erred in its handling of the transcript of the audio recording.

## II.

Rodriguez first claims that the evidence was insufficient to support his conviction for conspiracy to possess with intent to distribute methamphetamine within the time period alleged in the indictment. We reverse a conviction "for insufficient evidence only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." *United States v. White*, 816 F.3d 976, 985 (8th Cir. 2016).

To convict a defendant of conspiracy to possess with intent to distribute methamphetamine under 21 U.S.C. §§ 841(a)(1), 846, the government must prove that the defendant "intentionally became a part of . . . an agreement among individuals to" possess with intent to distribute methamphetamine. *See United States v. Herra-Herra*, 860 F.3d 1128, 1132 (8th Cir. 2017). "[A]n express agreement is unnecessary—a conspiracy may consist of simply a tacit understanding." *Id.* Because at least two individuals must be parties to an agreement in good faith for there to be a genuine agreement, "there can be no indictable conspiracy involving only the defendant and government agents and informers." *See United States v. Nelson*, 165 F.3d 1180, 1184 (8th Cir. 1999). To prove the existence of a conspiracy, the government need not establish the identities of the other conspirator(s); it just needs to establish that there were other conspirator(s). *Id.*

(noting that we have "sustain[ed] conspiracy convictions when all conspirators other than the defendant are unknown").

In cases involving the distribution of controlled substances, we distinguish between a conspiracy and a mere "buyer-seller" relationship. *United States v. Conway*, 754 F.3d 580, 591 (8th Cir. 2014). Evidence of "a single transaction . . . involving small quantities of drugs consistent with personal use" is consistent with a "mere buyer-seller relationship." *Id.* at 591-92. However, evidence of multiple transactions is evidence of a conspiracy. *See id.* at 592 (explaining that the "buyer-seller [jury] instruction is inappropriate where there is evidence of multiple drug transactions, as opposed to a single, isolated sale" (internal quotation marks omitted)). So is evidence that the transaction involved large quantities of drugs. *See United States v. Wiggins*, 104 F.3d 174, 177 (8th Cir. 1997) (treating the "receipt of large quantities of drugs" as indicative of a conspiracy rather than "a single buy-sell relationship").

Here, evidence of Rodriguez's dealings with the CI and evidence of Rodriguez's dealings with an unknown individual in Texas were each independently sufficient to support a reasonable jury's finding beyond a reasonable doubt that Rodriguez conspired to possess with intent to distribute methamphetamine within the time period alleged in the indictment.

Regarding the CI, Rodriguez points out, correctly, that the controlled buys executed after August 1 do not prove the existence of a conspiracy between Rodriguez and the CI because by then the CI was acting as a confidential informant. *See Nelson*, 165 F.3d at 1184 ("[T]here can be no indictable conspiracy involving only the defendant and government agents and informers."). But the CI testified that she had been purchasing methamphetamine from Rodriguez "[o]nce a week at least" during the time period "leading up to" August 1, when she became a confidential informant. And she testified that she purchased enough to satisfy her own addiction with plenty leftover to sell. Thus, there was evidence that, between July 1, 2017 and August 1, 2017, Rodriguez and the soon-to-be CI engaged in multiple drug

transactions involving more than "small quantities of drugs consistent with personal use." *See Conway*, 754 F.3d at 592. This alone is sufficient to support Rodriguez's conviction for conspiracy to possess with intent to distribute methamphetamine. *See id.*; *Wiggins*, 104 F.3d at 177.

In addition, law enforcement caught Rodriguez returning from Texas in November 2017 with more than 300 grams of methamphetamine after he had told the CI that he was going to Texas to replenish his stock. Thus, there was evidence that Rodriguez and an unknown individual in Texas engaged in a transaction involving a large quantity of drugs inconsistent with personal use. This also is sufficient on its own to support Rodriguez's conviction for conspiracy to possess with intent to distribute methamphetamine. *See Wiggins*, 104 F.3d at 177.[2]

In sum, there was sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Rodriguez conspired with the soon-to-be CI and with an unknown individual in Texas to possess with intent to distribute methamphetamine. Rodriguez emphasizes that much of this evidence consisted in the testimony of the CI, whose credibility he challenges. But "[i]t is axiomatic that we do not review questions involving the credibility of witnesses." *United States v. Dabney*, 367 F.3d 1040, 1043 (8th Cir. 2004). "Unwilling to usurp the jury's unique role in judging the credibility of witnesses," *id.*, we conclude that there was sufficient evidence to support Rodriguez's conviction for conspiracy to possess with intent to distribute methamphetamine.

---

[2]Furthermore, the CI testified that Rodriguez regularly sourced his methamphetamine from Texas. From this, a reasonable jury could infer that Rodriguez was making multiple purchases of methamphetamine from the same supplier rather than returning to the same location for unplanned, one-time transactions with different suppliers. This constitutes a second basis for finding that Rodriguez conspired with an unknown individual in Texas to possess with intent to distribute methamphetamine. *See Conway*, 754 F.3d at 592.

## III.

Rodriguez's second claim concerns the transcript of the audio recording. He argues that the district court erred by permitting the jury to view the transcript before defense counsel had an opportunity to review the transcript and take a position as to its accuracy. *See United States v. McMillan*, 508 F.2d 101, 105 (8th Cir. 1974) ("[A] transcript should normally be used only after the defendant has had an opportunity to verify its accuracy . . . ."). According to Rodriguez, the district court's error in permitting the jury to view the transcript, together with the fact that the transcript contained inaccuracies and the district court failed to provide a curative instruction, entitles him to a new trial.

Rodriguez frames his claim in terms of the Sixth Amendment right to trial by jury.[3] Ordinarily, we review claims of constitutional error, including violations of the Sixth Amendment right to trial by jury, *de novo*. *United States v. Hawkins*, 796 F.3d 843, 863 (8th Cir. 2015). "When there is no objection [at trial] to the lack of an instruction," however, the objection is forfeited, and "we review any decision by the district court to omit a curative instruction for plain error." *See United States v. LeGrand*, 468 F.3d 1077, 1081 (8th Cir. 2006). And when "a defendant knowingly and voluntarily waives a right, any error is unreviewable on appeal." *United States v. Campbell*, 764 F.3d 874, 878 (8th Cir. 2014).

Rodriguez's assertion that his counsel had no opportunity to review the transcript and take a position as to its accuracy fails to support his claim of error because it is false. Defense counsel received the transcript by email, agreed to stipulate as to its foundation and admissibility, and confirmed this agreement before the district court.

---

[3]Because we conclude that the district court did not commit the alleged error, we need not address whether Rodriguez is correct that the alleged error constitutes a Sixth Amendment violation.

Rodriguez's assertion that the transcript contained inaccuracies also fails to support his claim of error, even assuming it is true. Rodriguez's counsel confirmed her stipulation to the admissibility of the audio recording and its transcript before the court, in the presence of and without objection from Rodriguez. Thus, Rodriguez waived any objection that he may have had to the presentation of the transcript to the jury—including any objection on the ground that the transcript was inaccurate. *See United States v. Robinson*, 617 F.3d 984, 989-90 (8th Cir. 2010) (holding that defense counsel's stipulation to the admissibility of evidence, in the presence of and without objection from the defendant, constitutes a waiver of objections to the evidence's admission). Even assuming that, by objecting to the transcript after it was shown, Rodriguez successfully withdrew his earlier stipulation, *but see United States v. Mezzanatto*, 513 U.S. 196, 202 (1995) ("[A]greements to waive evidentiary rules are generally enforceable even over a party's subsequent objections."), the transcript was not replayed for or sent back with the jury. The only time the jury saw the transcript was when Rodriguez's waiver was unambiguously in effect.

That leaves Rodriguez's objection to the lack of a curative instruction. Because Rodriguez did not raise this objection below, we review his claim for plain error. *See LeGrand*, 468 F.3d at 1081. Rodriguez has failed to show any error, let alone error that was plain. As we have explained, Rodriguez waived any right that he may have had against the presentation of the transcript to the jury. Therefore, the district court did not err by permitting the jury to see the transcript. *See United States v. Olano*, 507 U.S. 725, 732-33 (1993) (explaining that, if a right has been waived, then what would otherwise violate the right does not constitute error). And if the district court did not err by permitting the jury to see the transcript, then neither did the district court err, plainly or otherwise, by failing to give a curative instruction. *See Hendricks v. Vasquez*, 974 F.2d 1099, 1108 (9th Cir. 1992) (explaining that no curative instruction is necessary where there is no underlying error to cure).

Therefore, the lack of a curative instruction regarding the transcript did not constitute error, let alone error that was plain.[4]

## IV.

For the foregoing reasons, we affirm.

_____

---

[4]Even assuming the district court did err in failing to give a curative instruction, Rodriguez's claim would not survive plain-error review because he has not shown that the lack of a curative instruction affected the outcome of the trial. *See LeGrand*, 468 F.3d at 1081.