# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3100

_____

United States of America

*Plaintiff - Appellee*

v.

Jennifer Marie Buford

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: April 15, 2022
Filed: July 29, 2022

_____

Before SHEPHERD, ERICKSON, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A grand jury indicted Jennifer Marie Buford with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D). Pursuant to a written plea agreement, Buford pled guilty to the charge of possession with intent to distribute marijuana. The plea agreement left the

determination of drug type and quantity to the district court.[1]  At sentencing and on motion of the government, the district court dismissed the possession with intent to distribute methamphetamine charge.  The district court sentenced Buford to 80 months imprisonment to be followed by 4 years supervised release.  Buford appeals the sentence, contending that the district court procedurally erred in calculating the applicable United States Sentencing Guidelines range.  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On October 15, 2020, Iowa state law enforcement officers executed a search warrant on Buford's Des Moines, Iowa home.  Officers found Buford and a male companion in Buford's bedroom, located on the home's lower level.  In that bedroom, officers found various baggies containing marijuana located around the room, which totaled 381.78 grams of marijuana.  Officers also found a baggie containing 2.95 grams of actual methamphetamine inside a vest on a night stand, as well as a bowl containing methamphetamine residue in a women's shoe box in the closet.  At Buford's sentencing hearing, Michael Bartak, an investigator with the Des Moines Police Department who had been a police officer since 2000 and a controlled substance offense investigator since 2008 and who had received training regarding methamphetamine distribution, testified that the bowl found in Buford's bedroom was consistent with bowls used to mix methamphetamine and break it down into smaller amounts.

Also on the night stand officers found a "Sentry" key, which fit the lock on the Sentry safe located in a detached garage.  Although the key fit, the safe also required a combination code.  Because officers did not possess the combination code, they

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

pried open the safe. Inside, officers found 164.44 grams of actual methamphetamine in six baggies, along with a receipt dated July 24, 2020, from a marijuana dispensary in Colorado. "Jennifer b oos" was printed on the receipt, and when officers contacted the dispensary listed on the receipt, they learned that anyone who purchased marijuana from the dispensary was required to present a valid driver's license and "oos" meant that the purchaser had an "out of state" driver's license. There was a second receipt in the safe, dated July 26, 2020, that was also from a marijuana dispensary in the Colorado area.

Officers found scales and empty baggies in Buford's kitchen. They also recovered three cell phones from the lower-level bedroom, one of which belonged to Buford. A subsequent search of Buford's phone, authorized by a search warrant, revealed an exchange of text messages between Buford's phone number and a phone number with an area code associated with Denver, Colorado, and surrounding areas. This text message exchange revealed a discussion about the sale of "cars" and "the price of the car," with Buford asking, "what's the price of the car" and the Denver-area phone number responding, "its going to be 6 for L." At sentencing, Investigator Bartak gave an opinion as to the meaning of the text message exchange. Investigator Bartak testified that the text messages were coded messages in which Buford discussed the purchase of methamphetamine. More specifically, he opined that in the text messages, Buford and the Denver-area phone number discussed the purchase of methamphetamine for $6,000 per pound.

In a post-<u>Miranda</u>[2] interview, Buford admitted to ownership of the scales and some of the empty baggies but stated that they were "not necessarily" for drug packaging. She stated that no one else living in the house had anything to do with the drugs found in her bedroom. She also admitted to possession of the marijuana and to being a long-time marijuana user, but she denied use of methamphetamine and

---

[2]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

possession of the methamphetamine located in the safe, instead claiming that it belonged to her brother. At sentencing, Buford testified that she had used methamphetamine in the past, but not since 2006. She stated that while the marijuana found in her bedroom belonged to her, the methamphetamine found in her bedroom and the safe did not. Buford further explained that at the time of the search, her brother, a heavy methamphetamine user, lived with her and slept in her bedroom on occasion, leaving some of his clothing and other possessions in that room. She testified that she had been on vacation prior to the October 15 search and left her three children in the home with her brother and a babysitter. When she returned from vacation, she found that her brother had been sleeping in her bedroom with his girlfriend. She denied having any knowledge of the methamphetamine, the vest, the Sentry key, or the bowl found by the officers, stated that her brother, as well as her daughter, stored property in the garage, and testified that the methamphetamine and the safe belonged to her brother. She explained that she had previously purchased marijuana in Denver for her brother and given him receipts for that marijuana so that he could reimburse her. Finally, Buford explained that the text messages were between her and the owner of a body shop in Muscatine, Iowa, who was not fluent in English, concerning the possible purchase of an automobile.

The district court credited the testimony of Investigator Bartak and declined to credit that of Buford, subsequently attributing the methamphetamine found in Buford's bedroom and the safe to her. Accordingly, the district court accepted the presentence investigation report's conclusion that Buford's offense involved a total of 381.78 grams of marijuana and 167.39 grams of methamphetamine for a total converted drug weight of 3,348.18 kilograms. This resulted in a base offense level of 32. The district court then explained that Buford "testified falsely under oath" and, accordingly, was not only ineligible for the three-level downward adjustment for acceptance of responsibility, as provided for in the plea agreement, but was also subject to a two-level upward adjustment for obstruction of justice. See USSG § 3E1.1 and comment. (n.1(A)) (providing for acceptance-of-responsibility downward

-4-

adjustment but explaining that "[a] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility"); USSG § 3C1.1 and comment. (n.2) (providing for obstruction-of-justice upward adjustment where defendant provided false testimony or false statements). The district court calculated Buford's total offense level as 34 with a criminal history category of II, resulting in a Guidelines range of 168 to 210 months imprisonment. The district court varied downward, sentencing Buford to 80 months imprisonment to be followed by a term of 4 years supervised release.

II.

Buford argues that the district court erred by attributing the methamphetamine that was found in her bedroom and the safe to her. After incorrectly attributing the methamphetamine to her, her argument goes, the district court relied on this incorrect drug amount to calculate a base offense level of 32, rather than a correct base offense level of 6. Buford also argues that the district court's choice not to credit her testimony resulted in its incorrect application of a two-level upward adjustment for obstruction of justice and denial of the three-level downward adjustment for her acceptance of responsibility provided for in the plea agreement. Buford concedes that "both issues she raises hinge on the district court's credibility findings made at the sentencing hearing," maintaining that "the district court [wrongly] concluded that the investigator was credible, Buford was not, and that further Buford lied." Appellant Br. 12. We disagree.

"We review the district court's application of the sentencing guidelines de novo." United States v. Walker, 688 F.3d 416, 420 (8th Cir. 2012). "'[W]e review [a district court's drug-quantity finding] for clear error and reverse only when 'the entire record definitely and firmly illustrates that the lower court made a mistake.'" United States v. McArthur, 11 F.4th 655, 659 (8th Cir. 2021) (per curiam) (second

alteration in original) (citations omitted). "At sentencing, '[t]he government bears the burden of proving drug quantity by a preponderance of the evidence.'" Id. (alteration in original) (citation omitted). When "the quantity of drugs [is] established through witnesses' testimony, the issue becomes one of credibility. 'It is . . . well established that in sentencing matters "a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal."'" United States v. Quintana, 340 F.3d 700, 702 (8th Cir. 2003) (second alteration in original) (citation omitted). Similarly, we review "the district court's factual findings underlying an adjustment for obstruction of justice or a denial of a reduction for acceptance of responsibility . . . for clear error," United States v. King, 559 F.3d 810, 814 (8th Cir. 2009), "giving great deference to the sentencing court's determination," United States v. Whiting, 522 F.3d 845, 849 (8th Cir. 2008).

We first turn to Buford's argument that the district court erred in determining that the methamphetamine found in her bedroom and the safe was attributable to her for Guidelines purposes. The district court thoroughly discussed the testimony and other evidence presented before concluding that Investigator Bartak, rather than Buford, was credible and relying on Investigator Bartak's testimony to determine the applicable drug quantity. The district court stated that it credited "the testimony of Investigator Bartak based upon his training and experience, my observations of him today, and I find him to be credible, thoughtful, and truthful in his testimony that he has provided based upon his training and experience."

More specifically, as to the text messages exchanged between Buford and the Denver-area phone number, the district court found that Buford's characterization of those text messages (as being about the sale of a car) was "not consistent with a transaction for a car," "simply implausible," and "incredible." And, in declining to credit Buford's testimony regarding these text messages, the district court observed that "[Buford's] countenance and demeanor when testifying about this was shifty, and it was—and it is a story the [district c]ourt does not credit, and it is inconsistent with

-6-

other evidence that's in the record that is unobjected to by the defense," additionally noting that "nothing in this [text message] exchange . . . suggests any specificity of a car, the type of car, the nature of the car, which car." The district court instead chose to rely on Investigator Bartak's testimony that the language contained in the text messages was consistent with language discussing the amount and price of methamphetamine. Then, as to the methamphetamine found in the safe, the district court acknowledged Buford's "alternative explanation for the large amount of methamphetamine found in a safe in her garage," namely that she was unaware of the methamphetamine, did not possess the methamphetamine, and the methamphetamine belonged to her brother. The district court found that Investigator Bartak's explanation for the methamphetamine, that it belonged to Buford, was reliable before noting facts such as "[t]he presence of the methamphetamine in the vest in [Buford's] room, the presence of a key . . . in [Buford's] room in the same location, the fact that the marijuana that was seized that the defendant has accepted responsibility for was also seized from this same room . . . [a]nd the fact that the bowl was in a women's Nike box in [Buford's] closet."

After reviewing the record, including the district court's carefully explained credibility determinations, we find that there is nothing in the record which "definitely and firmly illustrates that the lower court made a mistake." McArthur, 11 F.4th at 659 (citation omitted). The district court was free to credit Investigator Bartak's testimony and refuse to credit that of Buford, and its choice to do so is "virtually unassailable on appeal." See Quintana, 340 F.3d at 702 (citation omitted). Finding no clear error, we affirm the district court's drug quantity determination and resulting calculation of the applicable base offense level.

We now turn to Buford's argument that the district court erred in finding that Buford knowingly provided false testimony at her sentencing hearing. As the government notes in its brief to this Court, and as recognized supra, Buford challenges only the district court's factual finding that her testimony was not truthful,

not the district court's application of the Guidelines provisions for acceptance of responsibility or obstruction of justice. See Appellee Br. 21 ("Buford does not now claim, nor did she at sentencing, that the court improperly applied the [G]uideline[s] provisions for acceptance of responsibility or obstruction of justice[.]"); see also Appellant Br. 12 ("Buford acknowledges up-front that both issues she raises hinge on the district court's credibility findings made at the sentencing hearing."). Having concluded that the district court did not clearly err in declining to credit Buford's testimony and attributing the methamphetamine to Buford, we similarly find that the district court did not clearly err in concluding that Buford provided false testimony under oath, denying the three-level downward adjustment on that basis. See United States v. Janis, 71 F.3d 308, 310 (8th Cir. 1995) ("The defendant bears the burden of showing a 'recognition and affirmative acceptance of responsibility.'" (citation omitted)); see also United States v. Montano, 961 F.3d 1008, 1013 (8th Cir. 2020) (finding no error in denying three-level downward adjustment for defendant's acceptance of responsibility where defendant "testified falsely at the hearing"). Relatedly, because the district court did not clearly err in finding that Buford lied under oath, it did not err in applying a two-level upward adjustment for her obstruction of justice. See Montano, 961 F.3d at 1012 (finding no error in applying two-level upward adjustment for obstruction of justice where defendant lied under oath).

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____