# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2334
_____

United States of America

*Plaintiff - Appellee*

v.

Derrick Stephen Walker

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: March 15, 2023
Filed: May 18, 2023
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury found Derrick Stephen Walker guilty of sexual exploitation of a child, *see* 18 U.S.C. § 2251(b), (e), and receiving images depicting the sexual exploitation of a child, *see* § 2252(a)(2), (b)(1). The district court[1] sentenced him to 540 months'

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

imprisonment.  Walker now asks that we vacate his convictions and remand for a new trial because the district court failed to suppress evidence obtained from a search of his cellphone, excluded other evidence that he sought to admit at trial, and gave an incorrect jury instruction.  We affirm.

**I.**

Derrick Walker and Darren Heidinger were coworkers.  At some point, Walker began an adulterous relationship with Darren's wife, Katie.  Darren grew suspicious, so one night he looked through Katie's cellphone for evidence of the affair.  What he found was a video of Katie performing a sexual act on their infant child.  He called the police, who soon arrived, viewed the video, and arrested Katie.  In an interview, she told them that she sent Walker numerous photographs and videos of herself sexually abusing her and Darren's three young children.  She explained that she did this to win Walker's affection, as she understood that he was sexually attracted to young children.  She insisted that "it was all [her] idea" and that Walker never asked her to send him anything.

Relying on what Katie told them, officers applied for a search warrant for Walker's home and person.  The caption of the application listed only Walker's residence "and any computer(s), cell phone(s), and electronic storage media found therein."  Nonetheless, the body of the application stated that "people often carry personal electronics on their person such as cell phones" and expressly identified "the person of Derrick Stephen Walker" as a place to be searched.  A state judge then issued two search warrants simultaneously, one for Walker's home and one for his person.  Warrants in hand, officers spotted Walker at a restaurant and looked through his cellphone.  After finding several images of children being sexually abused, they arrested him.

Following Walker's arrest, Katie asked to speak with the police again.  In this second interview, she claimed that the sexually explicit images and videos of her

children were taken strictly at Walker's behest and that her earlier claim of sole responsibility was a lie.

Walker was then indicted on six counts of child sexual exploitation and one count of receiving images of child sexual exploitation. He moved to suppress the evidence from the search of his cellphone, challenging the search warrant for his person on two grounds: (1) the caption of the warrant application did not mention his person and (2) the application was devoid of "a methodology and protocol to search the phone." In the same motion, he requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to present evidence of the warrant's invalidity. He did not contest that the application, on its face, provided probable cause for a warrant. The district court denied his motion, determining that the warrant was supported by probable cause and that the omission of Walker's person from the application's caption was merely a clerical error.

The parties proceeded to trial. One of the Government's witnesses was Jesse Smith, a Special Agent with the North Dakota Bureau of Criminal Investigation, who had performed a forensic examination of Katie's and Walker's cellphones. Agent Smith testified that he uncovered from Katie's phone 543 images and 11 videos depicting child sexual exploitation. He explained that several of these images and videos were also found on Walker's phone.

Katie also testified for the Government. She described how, shortly after beginning an extramarital affair with Walker, he told her that he had a sexual fascination with young children. Because she was infatuated with him, she agreed to provide him, via text message and Snapchat, hundreds of sexually explicit images of her children and others that she babysat—including images of her engaging in sexual activity with them. She said that Walker affectionately referred to her as a "loving pedo mom." Katie also described bringing her children to Walker's home so that she and Walker could sexually abuse them in concert. She testified that Walker once asked her to photograph him while he engaged in a sexual act with her one-year-old son, and that she complied.

During cross-examination of Katie, Walker sought to admit a five-second-long video that she recorded of Darren (who also testified for the Government). The video depicted a nude Darren dancing and rubbing his genitals against Katie's knee while one of their infant children sat under a blanket in her lap. The district court agreed with the Government that the video was not relevant, and thus, inadmissible. *See* Fed. R. Evid. 402. The court added that, even if it were relevant, it would be inadmissible under Rule 403 given its potential to embarrass or intimidate Darren and confuse the jury.

In its summation, the Government explained its aiding-and-abetting theory of Walker's guilt for child sexual exploitation, arguing, "[Katie] wasn't creating [this] as a memento for herself and just happened to share it with [Walker]. She was creating it for him because that's what he requested." The Government therefore asked for a jury instruction on aiding and abetting, which the district court gave without objection from Walker.

The jury found Walker guilty on all counts, and the district court sentenced him to 540 months' imprisonment. On appeal, Walker challenges the denial of his suppression motion and *Franks* request, the exclusion of the video of Darren, and the legal accuracy of the aiding-and-abetting instruction.

## II.

We begin with Walker's suppression motion and request for a *Franks* hearing. When considering the denial of a motion to suppress, we review the district court's factual findings for clear error, and we review the ultimate question of whether the Fourth Amendment was violated *de novo*. *United States v. Armstrong*, 60 F.4th 1151, 1160 (8th Cir. 2023). We review the denial of a *Franks* hearing request for an abuse of discretion. *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013).

On appeal, instead of renewing the two arguments that he made in his suppression motion, Walker raises new ones. First, he claims that the search warrant

for his person lacked probable cause because the application relied on information from Katie, who admitted in her second interview that she had initially lied to the police.  *See United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) ("Where probable cause depends upon information supplied by an informant, the core question is whether the information is reliable." (brackets, ellipsis, and internal quotation marks omitted)).  Second, he argues that he should have received a *Franks* hearing because, had the application mentioned that Katie lied, the state judge would not have found probable cause to issue the warrant.  *See Arnold*, 725 F.3d at 898 (explaining that a defendant is entitled to a *Franks* hearing when he makes a "substantial preliminary showing" that probable cause would be lacking if deliberately or recklessly omitted facts had been included in the warrant application).

Walker has not shown "good cause" for failing to raise these new challenges below, so they are waived.  *See* Fed. R. Crim. P. 12(b)(3)(C), (c)(3); *United States v. Green*, 691 F.3d 960, 963-65 (8th Cir. 2012) ("[T]he mere filing of a [suppression] motion is not sufficient to avoid waiver of specific arguments that are advanced for the first time on appeal.").  In any event, as Walker's attorney conceded at oral argument, these challenges are premised on a basic factual misunderstanding.  When officers applied for the search warrant for Walker's person, Katie had only given one police interview.  Her second interview, in which she admitted that some of her earlier statements were lies, took place after the warrant was issued, after the search was executed, and after Walker was arrested.  Obviously, it would have been impossible for the warrant application to mention an interview that had not yet occurred.  Accordingly, the district court did not err in denying Walker's suppression motion nor abuse its discretion in rejecting his request for a *Franks* hearing.[2]

---

[2]At oral argument, Walker's attorney seemed to suggest that he had preserved the argument that the omission of Walker's person from the caption should have triggered a *Franks* hearing.  This argument is not clearly renewed in his brief, however, so we need not consider it.  *See United States v. Flores*, 362 F.3d 1030, 1039 n.3 (8th Cir. 2004) ("Claims not argued in the briefs are deemed abandoned on appeal.").  But even if it were properly raised, we would reject it.  Walker offered no evidence to the district court that the omission of his person from the caption was anything other than an innocent clerical mistake.  *See United States v. Butler*, 594

**III.**

We now address the district court's determination that the video of Darren Heidinger was inadmissible under Federal Rule of Evidence 402, or, alternatively, Rule 403. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Sigillito*, 759 F.3d 913, 937 (8th Cir. 2014).

To be admissible, evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This threshold is "quite minimal." *United States v. Nadeau*, 598 F.3d 966, 968 (8th Cir. 2010). Even so, under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." We afford "great deference" to a district court's determination that evidence is inadmissible under Rules 402 and 403. *United States v. Pumpkin Seed*, 572 F.3d 552, 558 (8th Cir. 2009).

Walker argues that the video of Darren dancing in the nude and rubbing his genitals against Katie in front of their child was relevant because it demonstrates Katie's willingness to subject her children to sexual exploitation without any urging or encouragement from others. But in our view, even if the video were relevant, the district court was allowed to exclude it under Rule 403. The five-second-long clip, unlike the images and videos that Katie transmitted to Walker, does not depict child sexual exploitation. Instead, it depicts Darren, a Government witness, interacting

F.3d 955, 961 (8th Cir. 2010) (explaining that "mere typographical error[s]" in a warrant application do not establish a "deliberate falsehood" or a "reckless disregard for the truth" that would trigger a *Franks* hearing). Moreover, he could not articulate how the inclusion of his person in the caption—assuming it was even deliberately or recklessly omitted—would have changed the issuing judge's probable-cause determination. *See id.* at 961-62.

with his wife in the privacy of his home. We therefore agree with the court that it had no more than a marginal relationship to the issue of Walker's guilt while presenting a considerable risk of unfair prejudice. *See United States v. Woods*, 978 F.3d 554, 561, 567 (8th Cir. 2020) (observing that a risk of unfair prejudice exists where the evidence might lead the jury to "punish" the government's witness for "misconduct" rather than assess the evidence against the defendant). Further, we note that the court expressly allowed Walker's attorney to ask Katie whether she had ever recorded sexually explicit videos of her husband. *See id.* at 567 (affirming exclusion of evidence under Rule 403 where the district court "did not completely close the door on the possibility of allowing the jury to hear" about the evidence). Therefore, giving great deference to the balance that the district court struck between the video's probative value and prejudicial effect, we find no abuse of discretion in the court's ruling.

## IV.

Finally, we consider the aiding-and-abetting instruction. Ordinarily, we review a district court's jury instructions for an abuse of discretion, but because Walker did not object below, we review for plain error only. *See United States v. Weckman*, 982 F.3d 1167, 1174 (8th Cir. 2020). Under plain-error review, Walker must show (1) an error that (2) was plain or obvious, (3) affects his substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 1175.

In its instructions to the jury, the district court began by reciting the elements of sexual exploitation of a child: (1) the victim(s) were under the age of eighteen, (2) the offender was the parent, legal guardian or custodian of the victim(s), (3) the offender "knowingly permitted" the victim(s) to engage in sexually explicit conduct, (4) the offender "acted with the purpose of producing" any visual depiction of the conduct, (5) the offender "knew or had reason to know" that such visual depiction would be transmitted in interstate commerce, and (6) the depiction was in fact

transmitted in interstate commerce. *See* § 2251(b). The court then gave the following instruction on aiding and abetting:

> A person may also be found guilty of sexual exploitation of a child even if he personally did not do every act constituting the offense . . . if he aided and abetted the commission of [the offense]. In order to have aided and abetted . . . a person must, before or at the time the crime was committed:
>
> > (1) have known the sexual exploitation of a child was being committed or going to be committed;
> >
> > (2) have had enough advance knowledge of the extent and character of the crime that he was able to make the relevant choice to walk away from the crime before all elements of the crime of sexual exploitation of a child were complete; and
> >
> > (3) have knowingly acted in some way for the purpose of causing or encouraging the commission of the crime of sexual exploitation of a child.
>
> For you to find the Defendant guilty . . . by reason of aiding and abetting, the Government must prove beyond a reasonable doubt that all of the elements of the sexual exploitation of a child were committed by some person or persons and that the Defendant aided and abetted the commission of that crime . . . .

Walker claims that this aiding-and-abetting instruction is erroneous because it omits an additional, fourth element included in the Eighth Circuit's Model Jury Instructions: that the defendant "have [intended] [known] (insert mental state required by principal offense)." *See Eighth Circuit Manual of Model Jury Instructions (Criminal)* 5.01 (2021). He argues that this fourth element is essential because aiding and abetting "is not a separate crime but rather is linked to the underlying offense and shares the requisite intent of that offense." *See United States v. Roan Eagle*, 867 F.2d 436, 445 (8th Cir. 1989). In response, the Government concedes that the jury needed to find that Walker had the same *mens rea* as Katie,

the principal of the underlying child sexual exploitation, but argues that this requirement is already covered by the third element of the instruction.

We conclude that the district court did not plainly err by omitting the fourth aiding-and-abetting element from the model jury instructions. We are aware of no case in which we specifically discussed this element, much less declared it mandatory. *See United States v. Owens*, 966 F.3d 700, 705 (8th Cir. 2020) (explaining that "[u]nless mandated by this court in a decision," the model jury instructions are "not binding on the district courts"). And unlike the first three elements in the model instructions, the fourth element is set off by brackets, indicating that it is not meant to be included in every aiding-and-abetting case. *See Model Jury Instructions* 5.01; *id.* at xi (explaining how to interpret bracketed phrases). Therefore, without deciding whether the first three model elements would alone be sufficient in every aiding-and-abetting case, we hold that, here, it was not obvious that the district court needed to recite the fourth element.

## V.

For the foregoing reasons, we affirm Walker's convictions.

_____