# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2044

_____

United States of America

*Plaintiff - Appellee*

v.

Samuel Sherman, also known as Big Hitt

*Defendant - Appellant*

_____

No. 22-2063

_____

United States of America

*Plaintiff - Appellee*

v.

Donald Bill Smith

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: June 14, 2023
Filed: August 30, 2023

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Samuel Sherman and Donald Smith guilty of conspiracy to commit witness tampering resulting in death. *See* 18 U.S.C. § 1512(a)(1)(A), (k). The jury also found Smith guilty of witness tampering resulting in death, *see id.* § 1512(a)(1)(A), conspiracy to possess with intent to distribute methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), 846, and aiding and abetting the use of a firearm in relation to a drug-trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A), (j). After denying Sherman's and Smith's motions for judgment of acquittal on those counts, the district court[1] sentenced both men to life imprisonment. They appeal their convictions, and we affirm.

**I.**

We begin by recounting the evidence presented at trial in the light most favorable to the jury's verdict. *See United States v. Shavers*, 955 F.3d 685, 688 n.2 (8th Cir. 2020).

A.

Sherman and Smith are cousins who dealt drugs. While serving a term of supervised release in another federal case, Sherman sold methamphetamine five times to Susan Cooper, a confidential informant working with law enforcement. Based in part on these sales, the Government filed a petition to revoke Sherman's supervised release and began considering new federal drug-distribution charges against him. The Government and Sherman's counsel discussed resolving the pending revocation proceeding and potential criminal charges with a guilty plea.

_____

[1]The Honorable D. Price Marshall, Jr., Chief Judge, United States District Court for the Eastern District of Arkansas.

The parties negotiated, but no agreement was reached. Cooper would have been the key witness had the revocation hearing gone forward as planned. She also would have been a witness in the potential federal charges arising from Sherman's sale of drugs.

Sherman and Smith suspected that Cooper was working as a confidential informant. Sherman once confronted her with a pistol and asked if she was working for law enforcement. Another time, after Cooper had conducted a controlled buy of methamphetamine from Sherman and turned over the drugs to law enforcement, Sherman called her and asked for a photograph of the drugs he had just sold to her. Sherman and Smith also once tried to kidnap her. After several unsuccessful attempts to "get" Susan Cooper, Sherman and Smith enlisted the help of Racheal Cooper, Susan's sister-in-law.

At Smith's behest, Racheal made plans to meet with Susan to facilitate a drug deal a few days before the scheduled revocation hearing. Smith told Racheal to bring Susan to meet him at a vacant house. Racheal and Susan went to the house, sat on the tailgate of a truck, and waited for Smith. After a while, Racheal decided to leave and began walking toward the driver's-side door when Smith appeared and shot Susan. Susan ran to the truck's passenger seat and pleaded to Racheal, "[w]ill you please get me out of here?" Smith came to the passenger door, shot Susan several more times, and pulled her out of the truck as Racheal drove away. Susan died.

B.

A grand jury indicted Sherman and Smith on five counts. The first count alleged that Sherman and Smith conspired to commit witness tampering resulting in death, *see* 18 U.S.C. § 1512(a)(1)(A), (k), and the second count alleged that Smith committed the witness tampering resulting in the death, *see id.* § 1512(a)(1)(A). The third count alleged that Sherman and Smith conspired together and with others to possess with intent to distribute methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846. The fourth and fifth counts alleged that Sherman and Smith conspired together and

with others to use a firearm in relation to a drug-trafficking crime and that they aided and abetted one another in using a firearm in relation to a drug-trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A), (j). Sherman and Smith pleaded not guilty.

Sherman moved to sever his trial from Smith's. The district court denied the motion. At trial, Sherman renewed his motion several times, but the district court repeatedly denied it. At the close of the Government's case-in-chief, Sherman and Smith moved for judgment of acquittal. The district court denied Smith's motion and most of Sherman's, though the court did acquit Sherman of the drug and firearms offenses. The next day, the district court dismissed count four on the Government's motion. After Sherman and Smith presented their defenses, the court denied their renewed motions for judgment of acquittal on the remaining counts and submitted the case to the jury. Sherman and Smith were found guilty on count one and Smith was found guilty on counts two, three, and five. The district court sentenced Sherman and Smith to life imprisonment, and they now appeal their convictions.

## II.

We first consider whether the district court erred in denying Sherman's repeated requests to be tried separately from Smith. Federal Rule of Criminal Procedure 14(a) permits severance when "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). We review the denial of Sherman's severance motions for an abuse of discretion, and we will not reverse unless Sherman shows prejudice that is both "clear[]" and "actual[]." *United States v. Garcia*, 785 F.2d 214, 220 (8th Cir. 1986).

The Government charged Sherman and Smith as co-conspirators. "The general rule is that persons charged in a conspiracy should be tried together." *United*

-4-

*States v. Lee*, 743 F.2d 1240, 1248 (8th Cir. 1984). Indeed, "it will be the rare case, if ever, where a district court should sever the trial of alleged coconspirators." *United States v. Spotted Elk*, 548 F.3d 641, 658 (8th Cir. 2008).

This is not such a case. Sherman argues that he was prejudiced by portions of the testimony of three witnesses that were admissible only against Smith. At various points, these witnesses testified that Smith told them that Susan was killed "for snitching" on Smith and Sherman's drug dealing. This testimony did not clearly and actually prejudice Sherman. To the contrary, it explains Smith's motivation for killing Susan without implicating Sherman. Moreover, the district court went to great lengths to instruct the jury that the challenged testimony was to be considered only against Smith. We are convinced that the district court's repeated limiting instructions sufficiently cured whatever risk of prejudice existed. *See Zafiro*, 506 U.S. at 539 ("[L]imiting instructions[] often will suffice to cure any risk of prejudice."); *Spotted Elk*, 548 F.3d at 658. And we likewise reject Sherman's assertion that asking jurors to consider small portions of three witnesses' testimony against Smith but not Sherman "asks too much of human nature," given the presumption that jurors follow the court's instructions. *See Jones v. United States*, 527 U.S. 373, 400 n.14 (1999). The district court did not abuse its discretion in denying the motions to sever.[2]

### III.

We next consider Sherman and Smith's sufficiency-of-the-evidence arguments. "We review the sufficiency of the evidence de novo, viewing evidence

---

[2]We note, too, that the district court's denial did not violate Sherman's rights under the Confrontation Clause. *See* U.S. Const. amend. VI. The Confrontation Clause applies only to *testimonial* hearsay, like statements made in the course of a police interrogation. *Davis v. Washington*, 547 U.S. 813, 822-24 (2006); *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Sherman does not claim that the challenged statements were testimonial, and his lawyer acknowledged at oral argument that they were "not *Crawford* stuff," that is, not testimonial hearsay. We agree.

in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Conway*, 754 F.3d 580, 587 (8th Cir. 2014). We will reverse only if no reasonable jury could have found all the elements of the offense proved beyond a reasonable doubt. *United States v. Bailey*, 54 F.4th 1037, 1039 (8th Cir. 2022).

A.

Sherman and Smith claim that the evidence was insufficient to support their witness-tampering convictions on counts one and two. The statute of conviction criminalizes killing another person with intent to "prevent the attendance or testimony of any person in an official proceeding," or conspiring to do so. 18 U.S.C. § 1512(a)(1)(A), (k). An "official proceeding" is "a proceeding before a judge or court of the United States, a United States magistrate judge, . . . or a Federal grand jury." *Id.* § 1515(a)(1)(A). But the "official proceeding need not be pending or about to be instituted at the time of the offense." *Id.* § 1512(f)(1). The parties do not dispute, and we assume, that to sustain the witness-tampering convictions the evidence must be sufficient to show some nexus between the defendants' conduct and a particular, foreseeable official proceeding. *See id.* § 1512(a)(1)(A) (criminalizing killing a person "with *intent* to prevent the attendance or testimony of any person *in an official proceeding*" (emphasis added)); *see also Arthur Anderson LLP v. United States*, 544 U.S. 696, 707-08 (2005); *United States v. Tyler*, 732 F.3d 241, 249-50 (3d Cir. 2013).

Sherman and Smith argue that the Government failed to establish a nexus between their conduct and an official proceeding. At the time Susan was murdered, the Government had petitioned to revoke Sherman's supervised release based on her work as a confidential informant. Sherman contends that he had already decided to admit the violations alleged in the petition and that Susan would not have been a witness at his upcoming revocation hearing. Thus, Sherman and Smith say that there could have been no official proceeding with which the two could have interfered.

-6-

We disagree. Sufficient evidence demonstrates a nexus between Susan's murder and the upcoming revocation hearing, as well as a potential future federal prosecution for distributing drugs. The jury heard from the prosecutor in the revocation matter and from Sherman's defense attorney that, while plea negotiations had taken place, those negotiations had resolved neither the pending revocation matter nor the potential additional charges. The jury also heard from the prosecutor that Susan would have been a key witness in the revocation hearing and in the potential future prosecution. We conclude that the evidence was sufficient for a reasonable jury to find a nexus between Sherman's and Smith's conduct and the pending revocation proceeding, as well as the potential future prosecution.[3]

## B.

Smith also claims that the evidence was insufficient to support his conviction for conspiracy to possess with intent to distribute methamphetamine and the related firearms charge. He contends that the evidence shows nothing more than a buyer-seller relationship between him and his alleged co-conspirators. Relatedly, he argues that, if there was insufficient evidence on the drug-distribution-conspiracy count, then the firearms charge predicated on that drug-trafficking crime must also fail.

To sustain Smith's conviction, the evidence must be sufficient for a reasonable jury to conclude beyond a reasonable doubt "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy."

---

[3]Besides the nexus issue, Sherman argues (in a mere two sentences) that the evidence was generally insufficient to prove that he conspired to murder Susan. As best we can tell, Sherman claims that the evidence was merely "circumstantial." But a "conspiracy may be proven through circumstantial evidence and by inferences based on the actions of the parties." *See Bailey*, 54 F.4th at 1040. Here, the jury heard that Susan was a key witness in Sherman's drug prosecution, that Sherman and Smith had a "hit" out on her, and that they had threatened her. Cell-site data indicated that Sherman and Smith were in close contact immediately before and after Smith shot Susan. This was sufficient.

*United States v. Keys*, 721 F.3d 512, 519 (8th Cir. 2013). In this context, "an express agreement is unnecessary—a conspiracy may consist of simply a tacit understanding." *United States v. Herra-Herra*, 860 F.3d 1128, 1132 (8th Cir. 2017). In drug-distribution cases, we distinguish between conspiracy and a mere "buyer-seller" relationship. *United States v. Rodriguez*, 984 F.3d 704, 708-09 (8th Cir. 2021). Evidence of a single transaction involving a small quantity of drugs consistent with personal use is consistent with a mere buyer-seller relationship. *Id.* at 709. "However, evidence of multiple transactions is evidence of a conspiracy." *Id.*; *see Conway*, 754 F.3d at 591.

Sherman and Smith were charged with conspiring with each other and "with other persons known and unknown" to possess with intent to distribute methamphetamine. The district court acquitted Sherman of this charge and the related firearms charges, and the Government does not argue that the evidence was sufficient to convict Smith of conspiring with Sherman. *Cf. United States v. Morton*, 412 F.3d 901, 904 (8th Cir. 2005) (holding that acquittal of only alleged co-conspirator does not require reversal of defendant's conspiracy conviction). However, the evidence presented at trial was nevertheless sufficient for the jury to find that Smith conspired with Racheal to possess with intent to distribute methamphetamine. *See United States v. Jones*, 880 F.2d 55, 65 n.12 (8th Cir. 1989) ("The superseding indictment alleges and the evidence establishes, however, that unindicted individuals known and unknown to the grand jury also were involved in the [drug] trafficking. In such circumstances a defendant's conviction for conspiracy may stand notwithstanding the acquittal of his co-defendants.").

Racheal testified that she bought methamphetamine from Smith and that she did so two to three times a week. She further testified that she routinely obtained the drugs from Smith before selling to third parties. And at one point, Racheal agreed that she could "get the meth [from Smith] before [she] ha[d] the money or the drugs to exchange it." From this answer, a jury could infer a conspiracy, as it suggests that she could only pay in full once she sold some of the methamphetamine to others. Thus, the evidence shows more than a mere buyer/seller relationship

between Smith and Racheal and suffices to support Smith's convictions for conspiracy to possess with intent to distribute methamphetamine. *See Rodriquez*, 984 F.3d at 709-10; *Conway*, 754 F.3d at 591; *cf. United States v. Stevenson*, 979 F.3d 618, 622 (8th Cir. 2020) ("We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses."). Because Smith's challenge to his conviction on the firearms offense rests entirely on his argument that the evidence was not sufficient to prove a drug-distribution conspiracy, we find the evidence sufficient to prove Smith's guilt on the firearms offense as well.

**IV.**

Lastly, we consider Smith's argument that the district court erred by admitting into evidence text messages sent by Smith to his girlfriend, as well as testimony by one of Smith's acquaintances that he knew Smith because they dealt drugs together. We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Walker*, 68 F.4th 387, 391-392 (8th Cir. 2023).

To be admissible, evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This threshold is "quite minimal." *Walker*, 68 F.4th at 392. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." We afford "great deference" to a district court's determination of admissibility under Rules 402 and 403. *See Walker*, 68 F.4th at 392.

Smith argues that his threatening and profane text messages to his girlfriend were inadmissible because they were irrelevant, unfairly prejudicial, and impermissible bad-character evidence. We disagree. The text messages were relevant because they revealed that Smith was aware that he was being investigated and that he threatened his girlfriend for upsetting another woman who could

implicate him in Susan's murder. The fact that Smith's text messages were aggressive and profanity-laden does not render the evidence "unfairly prejudicial," where the evidence was otherwise admissible "to show consciousness of guilt of the crime charged." *United States v. Skarda*, 845 F.3d 370, 377-78 (8th Cir. 2016). And contrary to Smith's argument, the Government did not use the text messages as bad-character evidence, but rather to show consciousness of guilt. *See id.* Thus, the district court did not abuse its discretion by admitting the text messages.

Smith also contends that his acquaintance's testimony that he had sold drugs with Smith was irrelevant and therefore inadmissible because their joint drug dealing ended before the period charged in the indictment. However, the Government elicited the testimony not to show that Smith sold drugs but to establish the trusting relationship between the acquaintance and Smith and to explain why Smith would be willing to discuss Susan's murder with him. The district court gave a limiting instruction explicitly confining that portion of the testimony to this purpose. Because the testimony showed the basis of Smith's trust of his acquaintance and bolstered the acquaintance's credibility, we discern no abuse of discretion. *See United States v. Geer*, 923 F.2d 892, 896 (1st Cir. 1991).

## V.

For the foregoing reasons, we affirm the convictions.

_____