# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2123
_____

United States of America

*Plaintiff - Appellee*

v.

Gilberto Aguilar-Beltran

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: March 15, 2024
Filed: May 17, 2024
[Unpublished]

_____

Before GRUENDER, SHEPHERD, and GRASZ, Circuit Judges.

_____

PER CURIAM.

A jury found Gilberto Aguilar-Beltran guilty of conspiracy to distribute and to possess with intent to distribute five hundred grams or more of methamphetamine mixture, *see* 21 U.S.C. §§ 846, 841(a)(1), (b)(1), as well as possession with intent to distribute five hundred grams or more of methamphetamine mixture, *see id.*

§ 841(a)(1), (b)(1). The district court[1] sentenced Aguilar-Beltran to 293 months' imprisonment. Aguilar-Beltran appeals, raising four arguments that we address in turn.

First, Aguilar-Beltran argues that insufficient evidence supports the jury's findings of guilt on both counts. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Sherman*, 81 F.4th 800, 806 (8th Cir. 2023). "We will reverse only if no reasonable jury could have found all the elements of the offense proved beyond a reasonable doubt." *Id.*

To sustain the conspiracy conviction, the evidence must be sufficient for a reasonable jury to conclude beyond a reasonable doubt "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *Id.* at 807. "In this context, an express agreement is unnecessary—a conspiracy may consist of simply a tacit understanding." *Id.* (internal quotation marks omitted). A "conspiracy may be proven through circumstantial evidence and by inferences based on the actions of the parties." *Id.* at 807 n.3. And to "prove possession with intent to distribute under 21 U.S.C. § 841(a), the government must show knowing possession of methamphetamine and the intent to distribute it." *United States v. Thompson*, 881 F.3d 629, 632 (8th Cir. 2018) (internal quotation marks omitted). Drug possession may be actual or constructive, sole or joint. *United States v. Blair*, 93 F.4th 1080, 1085 (8th Cir. 2024).

Aguilar-Beltran does not dispute that a conspiracy to distribute drugs existed. He instead claims that he did not know of the conspiracy and that, even if he was aware of the conspiracy, he did not intentionally join it. But the jury heard that

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

Aguilar-Beltran allowed his home to be used as a drug-distribution warehouse. And one witness identified Aguilar-Beltran as a person "in charge of sending the money back to Mexico," explaining that he was given instructions by a co-conspirator in Mexico to give drug proceeds to Aguilar-Beltran. Police also searched Aguilar-Beltran's house and determined that the northeast bedroom was his because it contained his driver's license, clothing, and mail. In the bedroom, police found 599 grams (more than a pound) of methamphetamine, a digital scale, cling film, a heat sealer, and $6,640.

From this evidence, a jury could have found that Aguilar-Beltran knew of the drug-distribution conspiracy and intentionally joined it. *See Sherman*, 81 F.4th at 807 n.3. And given the evidence of Aguilar-Beltran's dominion over his bedroom, a reasonable jury could have found that he maintained constructive possession over the drugs and other items. *See Blair*, 93 F.4th at 1085. From Aguilar-Beltran's possession of those items, a jury likewise could have found the requisite intent to distribute. *See United States v. Boyd*, 180 F.3d 967, 980-81 (8th Cir. 1999) (holding that a jury may infer intent to distribute from circumstantial evidence like drug quantity and the presence of cash, packaging material, or other distribution paraphernalia). Thus, we reject Aguilar-Beltran's contention that the evidence was insufficient on either count.

Second, Aguilar-Beltran challenges the district court's findings supporting the imposition of a two-offense-level increase under the sentencing guidelines because "the offense involved the importation of . . . methamphetamine." U.S.S.G. § 2D1.1(b)(5). We review the district court's findings for clear error. *See United States v. Werkmeister*, 62 F.4th 465, 468 (8th Cir. 2023); *United States v. Razo-Guerra*, 534 F.3d 970, 975 (8th Cir. 2008) ("The Government must prove by a preponderance of the evidence each of the facts necessary to establish a sentencing enhancement.").

The district court imposed the two-level increase after finding that Aguilar-Beltran's offenses involved the importation of methamphetamine from Mexico,

relying on the following facts to support its application of the enhancement. One of Aguilar-Beltran's co-conspirators sold methamphetamine to an undercover law enforcement agent after the agent had ordered methamphetamine from a source in Mexico. Over the course of the conspiracy, Aguilar-Beltran wired drug proceeds to Mexico on several occasions. On one occasion, Aguilar-Beltran was in contact with an individual in Mexico while distributing methamphetamine. An expert witness also testified that the vast majority of methamphetamine is produced in labs in Mexico and smuggled into the United States. In light of the above, we conclude that the district court did not clearly err in finding that the offenses involved the importation of methamphetamine from Mexico.

Third, Aguilar-Beltran argues that he was entitled to an offense-level reduction under the guidelines because he played only a minimal or minor role in the conspiracy. We review the district court's refusal to grant a mitigating-role adjustment for clear error. *United States v. Garcia*, 946 F.3d 413, 418 (8th Cir. 2019). The guidelines provide for a decrease of two to four offense levels if a defendant's "role in the offense" was "minimal" or "minor." U.S.S.G. § 3B1.2. When considering whether a mitigating-role reduction is appropriate, "the district court should consider the defendant's knowledge, planning, authority, responsibility, and benefit from the illegal scheme." *United States v. Jones*, 25 F.4th 1077, 1079 (8th Cir. 2022). It is the defendant's burden to prove that he had a mitigating role in the offense. *United States v. Young*, 689 F.3d 941, 946 (8th Cir. 2012).

The district court found that Aguilar-Beltran "played a role in every step of the drug distribution conspiracy." The record reflects that Aguilar-Beltran helped to transport methamphetamine to Omaha by hosting his co-conspirators at his home while they unloaded drugs from their car in his garage. Aguilar-Beltran himself sold one pound of methamphetamine to two other individuals. Trash pulls and a search of Aguilar-Beltran's residence further suggested that drugs were being stored and packaged in his home. The search also revealed that Aguilar-Beltran had methamphetamine in the nightstand beside his bed. We conclude that the district

court's decision to deny a mitigating-role adjustment was not clearly erroneous. *See United States v. Bush*, 352 F.3d 1177, 1182 (8th Cir. 2003) ("[O]ur cases make it clear that merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was deeply involved in the offense." (internal quotation marks omitted)).

Fourth, Aguilar-Beltran contends that the district court clearly erred when it determined at sentencing the quantity of methamphetamine attributable to him. "We review a district court's drug-quantity finding for clear error and reverse only when the entire record definitely and firmly illustrates that the lower court made a mistake." *United States v. Buford*, 42 F.4th 872, 876 (8th Cir. 2022) (internal quotation marks omitted); *see id.* (noting that drug quantity must be proved by a preponderance of the evidence). It is "well established that in sentencing matters a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." *Id.* (internal quotation marks omitted).

The district court found that Aguilar-Beltran was responsible for fifty pounds of methamphetamine mixture. A witness testified at trial that on at least two occasions twenty-five to thirty "burrito size" packages of methamphetamine were unloaded in Aguilar-Beltran's garage. Other evidence showed that such bulk packaging normally contains one pound of drugs. Thus, we conclude that the district court did not clearly err in its drug-weight determination. *See United States v. Padilla-Pena*, 129 F.3d 457, 467-68 (8th Cir. 1997) (explaining that the district court may rely on other evidence "to approximate total drug quantities beyond the amount of drugs actually seized"); U.S.S.G. § 2D1.1 cmt. n.5.

For the foregoing reasons, we affirm the judgment of the district court.

_____